United States District Court
District of Connecticut
FILED AT        HARTFORD
        10/21/03      19
Kevin F. Rowe, Clerk

By
        Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHARLES W. KERN                          :        CIVIL CASE NO.
      Plaintiff                        :        3:03cv0233(AVC)
VS.                                      :
                                         :
ENVIRONMENTAL DATA                       :
RESOURCES, INC.,                         :
      Defendant.                       :        APRIL 28, 2003

### FIRST SUBSTITUTED COMPLAINT

## I.    PRELIMINARY STATEMENT

1. This action seeks monetary damages from the defendant based on the defendant's unlawful refusal to pay the plaintiff wages, vacation pay and sick time benefits the defendant owed the plaintiff at the time it wrongfully terminated the plaintiff's employment. Also, the plaintiff seeks damages from the defendant based on the defendant's tortious interference with the plaintiff's efforts to obtain new employment. Additionally, the plaintiff seeks to enjoin the defendant's continuing efforts at enforcing the provisions of an onerous and legally deficient non-compete agreement, which have already resulted in the plaintiff losing a substantial job opportunity.

2. Further, this action seeks declaratory, injunctive and equitable relief, monetary and liquidated damages, and costs and attorney fees for the unlawful age discrimination

suffered by the plaintiff when the defendant terminated his employment on account of his age in violation of Title 29 U.S.C. §§ 621 et seq.

**II.**  **JURISDICTION**

3.  Jurisdiction over the plaintiff's claims is invoked pursuant to Title 28 U.S.C. §1332(a)(1).

4.  This action also arises under The Age Discrimination and Employment Act, Title 29 U.S.C. §621 et seq.

5.  Jurisdiction is further invoked pursuant to Title 28 U.S.C. §1331, Title 28 U.S.C. §1343(a)(3), Title 28 U.S.C. §1343(a)(4) and Title 29 U.S.C. §626(b).

6.  Jurisdiction over the plaintiff's state law claim is invoked pursuant to the Court's supplemental jurisdiction.

7.  All conditions precedent to jurisdiction under Title 29 U.S.C. §626, have occurred or have been complied with in the following manner:

8.  Charges of employment discrimination on the basis of age were filed on or about December 19, 2002, with the United States Equal Employment Opportunity Commission, the Florida Commission on Human Relations, and the Broward County Human Rights Division, which filings were made within 180 days of the commission of the unlawful employment practices alleged herein.

**III.**  **VENUE**

9. This action properly lies in the District of Connecticut pursuant to Title 28 U.S.C. §1391(a)(1), Title 28 U.S.C. §1391(b)(1) and as well as pursuant to Title 29 U.S.C. §626(c)(1).

## IV.    PARTIES

10. The plaintiff is a citizen of the United States and resides in Coconut Creek, Florida.

11. The defendant is a corporation organized and existing under the laws of the state of Delaware, and maintains its principal place of business in the State of Connecticut.

12. The defendant regularly transacts business in the state of Connecticut and is subject to the jurisdiction of the United States District Court for the District of Connecticut.

## V.    STATEMENT OF FACTS

13. The plaintiff was born on September 4, 1953.

14. By letter dated May 15, 2000, the defendant offered to employ the plaintiff in the position of Regional Manager for the State of Florida. (Exhibit A).

15. The plaintiff accepted the defendant's offer of employment and commenced work as the Regional Manager for the State of Florida soon thereafter.

16. The defendant conditioned its offer of employment to the plaintiff on the plaintiff's execution of a "Non-Compete/Confidentiality Agreement". (Exhibit B).

17. The terms of the "Non-Compete/Confidentiality Agreement" were not negotiable.

18. The plaintiff was required to execute the "Non-Compete/Confidentiality Agreement" or forego employment with the defendant.

19. The plaintiff, under a take it or leave it scenario, without the payment of any additional consideration, agreed on May 17, 2000 to the terms of the "Non-Compete/Confidentiality Agreement" on which the defendant conditioned the plaintiff's employment as the Regional Manager for the State of Florida.

20. The plaintiff was fully qualified to perform the duties of the position of Regional Manager for the State of Florida.

21. From the date of his hiring as the Regional Manager for the State of Florida, the plaintiff performed his duties and fulfilled his responsibilities in an excellent manner.

22. On July 11, 2002, the defendant summarily terminated the plaintiff's employment. (Exhibit C).

23. The defendant relied on a mistake in the plaintiff's June 29, 2002 expense report as an excuse to justify its termination of the plaintiff's employment.

24. The plaintiff had erroneously included expenses in his expense report of $38.15, $24.02, and $49.99 for which he had previously been reimbursed.

25. The defendant's Regional Vice President conceded in an email to the plaintiff dated July 9, 2002 that "I am sure all of these were simply oversights on your part."

4

26. In another email dated July 9, 2002, the defendant's Regional Manager for the State of Florida informed the plaintiff that the expense report errors constituted "no problem".

27. The reason advanced by the defendant for terminating the plaintiff's employment, the expense report errors, was a pretext to justify the defendant's illegitimate termination of the plaintiff's employment.

28. In October of 2002, the plaintiff entered into an agreement with Environmental First Search whereby the plaintiff would provide his services to Environmental First Search for compensation as an independent contractor.

29. The work the plaintiff would perform for Environmental First Search would exclude work within the State of Florida.

30. It was the plaintiff who voluntarily arranged the Florida exclusion with Environmental First Search so as to comply with a reasonable construction of the "Non-Compete/Confidentiality Agreement" the plaintiff had previously executed at the insistence of the defendant.

31. Despite the Florida exclusion in the plaintiff's working relationship with Environmental First Search, the defendant by letter dated November 25, 2002, threatened to sue Environmental First Search unless it terminated its business relationship with the plaintiff.

32. On that same date, the defendant threatened, in writing, the plaintiff with litigation unless he terminated his business relationship with Environmental First Search.

33. As a direct result of the actions of the defendant, Environmental First Search terminated its business relationship with the plaintiff on January 13, 2003.

VI.    **FIRST CAUSE OF ACTION**
       **(Violation of Connecticut General Statutes § 31-71(c) and § 31-71(k).**

34-66.    Paragraphs 1-33 are hereby made paragraphs 34-66.

67. After terminating the plaintiff's employment, the defendant failed to pay the plaintiff the compensation to which the plaintiff was legally entitled pursuant to the terms and conditions of his employment with the defendant.

68. After terminating the plaintiff's employment, the defendant failed to pay the plaintiff vacation pay, sick time pay, and holiday pay to which the plaintiff was entitled at the termination of his employment pursuant to the established policy of the defendant.

69. The defendant had an established policy of paying its terminated employees accrued sick, vacation and holiday pay.

70. The defendant's refusal to pay the plaintiff the compensation and fringe benefits it owed him was purposeful and with malice, meant to cause the plaintiff serious injury.

71. Pursuant to the provisions of Connecticut General Statutes § 31-70 et seq., the plaintiff is entitled to double damages and attorney fees and costs.

## VII.    SECOND CAUSE OF ACTION
### (Tortious Interference with Business Opportunity).

72-104. Paragraphs 1-33 are hereby made paragraphs 72-104.

105. There existed a contractual relationship between the plaintiff and Environmental First Search.

106. The defendant knew of the plaintiff's contractual relationship with the defendant.

107. The defendant intended to interfere with the plaintiff's contractual relationship with Environmental First Search and did, in fact, interfere with the plaintiff's contractual relationship with Environmental First Search.

108. The defendant's interference with the plaintiff's contractual relationship with Environmental First Search was tortious.

109. As a result of the defendant's tortious conduct, Environmental First Search terminated its contractual relationship with the plaintiff.

110. As a result of the defendant's tortious conduct, the plaintiff has suffered, and will continue to suffer, a loss of income into the foreseeable future.

111. As a result of the defendant's tortious conduct, the plaintiff has suffered actual damage.

## VIII.   THIRD CAUSE OF ACTION (Unreasonable Non – Compete Covenant).

112-144. Paragraphs 1-33 are hereby made 112-144.

145. The covenant not to compete contained in the "Non-Compete/Confidentiality Agreement", constitutes an unreasonable restraint on the plaintiff's ability to carry on his trade, profession and occupation, and is, therefore, void.

146. The geographic area covered by the restriction is unreasonable.

147. The degree of protection afforded the defendant by the restriction is unreasonable.

148. The extent of the restraint placed on the plaintiff's opportunity to pursue his occupation by the restriction is unreasonable.

149. The extent of the interference with the public interest is unreasonable.

150. The plaintiff has suffered irreparable harm as a result of the defendant's efforts at enforcing the covenant not to compete contained in the "Non Compete/Confidentiality Agreement".

151. The plaintiff is without an adequate remedy at law.

## IX.   FOURTH CAUSE OF ACTION
   (Breach of Contract for Payment of Wages).

152-184. Paragraphs 1-33 are hereby made 152-184.

185. After terminating the plaintiff's employment, the defendant failed to pay the plaintiff the compensation to which the plaintiff was legally entitled pursuant to the terms and conditions of his employment with the defendant.

186. After terminating the plaintiff's employment, the defendant failed to pay the plaintiff vacation pay, sick time pay, and holiday pay to which the plaintiff was entitled at the termination of his employment pursuant to the established policy of the defendant.

187. The defendant had an established policy of paying its terminated employees accrued sick, vacation and holiday pay.

188. The defendant breached its agreement to pay the plaintiff compensation for the work he had performed for the defendant.

189. Pursuant to the provisions of Fla. Stat. § 448.08, the plaintiff is entitled to costs of this action and a reasonable attorney's fee.

## X.    FIFTH CAUSE OF ACTION
### (Unlawful Age Discrimination).

190-222. Paragraphs 1-33 are hereby made 190-222.

223. There existed no legitimate non-discriminatory reason for the defendant to terminate the plaintiff's employment.

224. At the time the defendant terminated the plaintiff's employment, the plaintiff was fully capable of performing the duties and responsibilities to which he had been assigned.

225. The plaintiff had an excellent performance record with regard to his employment with the defendant.

226. The plaintiff, at the time of his termination, was performing the duties and meeting the responsibilities of his position in a more than satisfactory manner.

227. The plaintiff presently is fully capable of performing the duties and responsibilities that he had formally performed for the defendant.

228. The defendant terminated the plaintiff's employment on account of the plaintiff's age.

229. After the defendant terminated the plaintiff's employment, it assigned employees younger than the plaintiff to perform the duties and responsibilities for which the plaintiff had formally been responsible.

230. The plaintiff has been unable to find employment, even though he had made diligent efforts to do so after the defendant terminated his employment.

231. Because the plaintiff's age was a motivating factor and made a difference in the decision by the defendant to terminate the plaintiff's employment, the defendant has violated the provisions of the Age Discrimination and Employment Act, Title 29, U.S.C. 623(a)(I).

164. The defendant engaged in age discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under The Age Discrimination and Employment Act, Title 29 U.S.C. §623 et seq.

232. The defendant's claim that the plaintiff participated in wrongful expense reimbursement practices is merely a pretext for justifying its unlawful age discrimination.

233. Pursuant to the defendant's own policies and practices, and the overt representations it made to the plaintiff, the plaintiff's erroneous expense reimbursements was not a legitimate cause for terminating the plaintiff's employment.

## XI.   SIXTH CAUSE OF ACTION
### (Unlawful Retaliation).

234-266. Paragraphs 1-33 are hereby made paragraphs 234-266.

267. In retaliation for the plaintiff filing an age discrimination complaint against the defendant with the United States Equal Employment Opportunity Commission, the Florida Commission on Human Relations, and the Broward County Human Rights Division, the defendant filed spurious and vexatious claims against the plaintiff as counterclaims in this present action.

268. At the time the defendant filed its spurious causes of action against the plaintiff, it knew the plaintiff had filed a claim of age discrimination against it with the United States Equal Employment Opportunity Commission, the Florida Commission on Human Relations, and the Broward County Human Rights Division.

269. The defendant filed its counterclaims against the plaintiff in retaliation against the plaintiff as a result of the charge of discrimination the plaintiff filed against the defendant with the United States Equal Employment Opportunity Commission, the

11

Florida Commission on Human Relations, and the Broward County Human Rights Division.

270. In filing a claim against the defendant with the United States Equal Employment Opportunity Commission, the Florida Commission on Human Relations, and the Broward County Human Rights Division in which he alleged the defendant had discriminated against him on account of his age, the plaintiff was participating in an activity protected pursuant to the provisions of the the Age Discrimination In Employment Act, Title 29 U.S.C. § 623(d).

271. The actions of the defendant violate the provisions of the Age Discrimination In Employment Act, Title 29 U.S.C. § 623(d).

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

First Cause of Action:

    (a)    Award the plaintiff monetary damages;

    (b)    Award the plaintiff double damages;

    (c)    Award the plaintiff attorney fees.

    (d)    Award the plaintiff costs;

    (e)    Grant plaintiff such other relief as the Court may deem just and proper.

Second Cause of Action:

    (a) Award the plaintiff monetary damages;

    (b) Award the plaintiff punitive damages;

    (c) Award the plaintiff attorney fees;

    (d) Award the plaintiff costs;

    (e) Grant plaintiff such other relief as the Court may deem just and proper.

Third Cause of Action:

    a.    Issue a preliminary injunction barring the defendant from enforcing the covenant not to compete contained in the "Non-Compete/Confidentiality Agreement";

b. Issue a mandatory permanent injunction barring the defendant from enforcing the covenant not to compete contained in the "Non-Compete/Confidentiality Agreement";

c. Declare that the covenant not to compete contained in the "Non-Compete/Confidentiality Agreement" is null and void;

d. Award the plaintiff attorney fees;

e. Award the plaintiff costs;

f. Grant plaintiff such other relief as the Court may deem just and proper.

Fourth Cause of Action:

a. Award the plaintiff monetary damages;

b. Award the plaintiff attorney fees;

c. Award the plaintiff costs;

d. Grant plaintiff such other relief as the Court may deem just and proper.

Fifth Cause of Action:

a. Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights;

14

b.  Enjoin the defendant from engaging in such conduct;

c.  Award plaintiff equitable relief of reinstatement and back pay up to the date of judgment, together with prejudgment interest for the entire period as well as front salary and benefits accrual;

d.  Award plaintiff liquidated damages;

e.  Award plaintiff costs and attorney fees; and

f.  Grant such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A JURY TRIAL TO JUDGE HIS CAUSES OF ACTIONS.**

THE PLAINTIFF – CHARLES W. KERN

BY _____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT   06604
Tel: (203) 366-3939
Fed. Bar #ct07805





**Environmental
Data
Resources, Inc.**

*an .edr company*

May 15, 2000

Mr. Charlie W. Kern
EDR
3530 Post Road
Southport, CT 06490

Dear Charlie:

On behalf of Environmental Data Resources, Inc. (the "Company"), I am pleased to offer you the position of Regional Manager. This Letter Agreement and the attached Employee Non-Compete/Confidentiality Agreement (collectively, the "Agreements") contain the terms and conditions of your employment.

**Position:** Regional Manager for the following state(s): Florida.

**Salary:** Salary will be paid on the 15th and last day of each month. Your annual rate of pay will be $42,333, resulting in a twice monthly check in the amount of $1,764, less taxes and any withholding for certain benefit plan(s) to which employees contribute and in which you participate.

**Performance Bonuses:**

**Monthly Performance Bonus:** A monthly performance bonus will be calculated at the conclusion of each month according to the scheduled listed on Appendix A which is attached to this agreement letter. Monthly bonuses are paid in the month following the month for which the bonus is calculated. One half of the monthly bonus will be paid on the 15th day and one half will be paid on the 30th day. A minimum monthly bonus will be paid for the period June 2000 to December 2000 equal to your average monthly commission over the previous six month period (December 1999 to May 2000).

**Annual Reconciliation Bonus:** An annual reconciliation bonus will be calculated at the conclusion of each fiscal year, beginning at the conclusion of fiscal year 2001, according to the example listed on Appendix A which is attached to this agreement letter.

**Starting Date:** June 1, 2000.

**Vacation:** You shall be entitled to such reasonable vacations as may be allowed by the Company in accordance with established practices, but in any event not less than two (2) weeks during each twelve (12) month period. In addition, you shall be entitled to six (6) paid holidays and four (4) paid floating holidays during each twelve (12) month period. All vacation and paid holidays must be used in the twelve (12) month period in which they accrue.

**Sick Leave:** You shall be entitled to such reasonable paid sick days as may be allowed by the Company in accordance with established practices, but in any event not less than five (5) days during each twelve (12) month period. All sick leave must be used in the twelve (12) month period in which it accrues.

**Additional Benefits:** You shall be entitled to participate in any and all employee benefit plans in effect for employees of the Company, but the Company shall not be required to establish any such plan. Such participation shall be subject to: (i) the terms of the applicable plans; (ii) the Company's policies; and (iii) the discretion of the Board of Directors or any administrative or other committee provided for in or contemplated by such plan. The Company may alter, modify, or terminate its employee benefit plans at any time as it, in its sole judgment, determines to be appropriate, without any recourse by you.

**Employment Status:** You will be employed on an at-will basis. That means that the Company may terminate your employment at any time, with or without notice to you, and for any reason or no reason whatsoever. Likewise, you may terminate your employment at any time, with or without notice to the Company, and for any reason or no reason whatsoever. You acknowledge that no oral representations or promises regarding your employment status have been made to you that are contrary to your employment on an at-will basis, that your employment is indefinite in duration, and that you do not have an implied or express contract with the Company to be employed on any basis other than at-will.

Only the Chairman of the Board of Directors ("Chairman") and the Chief Executive Officer ("CEO") of the Company have the authority to enter into an agreement for employment for any particular length of time and such an agreement must be in writing. Hence, while you are employed by the Company, you may only rely on such a promise in the event that it is made by the Chairman or the CEO of the Company and is in writing.

**No Restrictions on Employee:** You agree that you are not subject to any employment, confidentiality, non-competition, or other agreement that would restrict or interfere with your performance as an employee of the Company.

**Choice of Law:** The Agreements and all questions or disputes concerning the construction, validity and interpretation of the Agreements shall be governed by the law of the State of Connecticut and without giving effect to any choice or conflicts of law principles.

**Severability:** If for any reason, any provision or provisions of the Agreements is or are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect of those portions of the Agreements that are valid.

**Entire Agreement:** The Agreements constitute the entire agreement and understanding of the parties with respect to the subject matter thereof, and supersede any previous understandings or agreements, whether oral or written, express or implied. None of the terms or provisions of the Agreements may be waived, altered, modified or amended except in writing duly signed by the Chairman or CEO of the Company and you.

**No Waiver:** The Company's failure at any time to enforce any of its rights under the Agreements in the event of your breach or default of any obligations herein shall in no way be construed as a waiver of any of the Company's rights or in any way effect the Company's right to require your performance of any provision of the Agreements.

**Assignability:** The Company may assign the Agreements to any other corporation or entity which acquires (whether by purchase, merger, consolidation or otherwise) all or substantially all of the business and/or assets of the Company and the Agreements shall be binding upon the successors and assigns of the

Company and you.

**Notices:** All notices and other communications provided under the Agreements shall be in writing and shall be deemed to have been given three days after having been delivered or mailed by first-class, registered or certified mail, as follows: (a) if to you, at the address provided to the Company or to such other person(s) or address(es) as you shall have furnished to the Company in writing; and (b) if to the Company, addressed to the Chairman or the CEO or to such other person(s) as the Company shall have furnished to you in writing.

You may wish to consult an attorney prior to agreeing to the terms and conditions of the Agreements.

We hope that you will accept the Company's offer of employment. If you decide to do so, please acknowledge your acceptance of this offer by signing and returning this letter to me at your earliest convenience.

If you have any questions, please do not hesitate to contact me.

Sincerely,


Joseph T. Freehill
Regional Vice President


I fully understand and accept the terms and conditions of employment set forth above.


Name: _____
Dated:

EDR Employment Letter Agreement

Appendix A

**Monthly Performance Bonus:**

| % of Actual Bookings vs. Budgeted Bookings | Monthly Bonus |
| --- | --- |
| 80-89% | |
| 90-99% | $2,500 |
| 100-109% | $3,000 |
| 110-119% | $4,000 |
| 120-129% | $4,250 |
| 130-139% | $4,500 |
| 140-149% | $4,750 |
| | $5,000 |
| Over 150% - $200 for every 10% up to 200% | |

**Annual Reconciliation Bonus:**

An annual reconciliation bonus will be calculated according to the following example:

- Annual Reconciliation calculation example:
  Month 1:   80% of Budget = $2,500
  Month 2: 200% of Budget = $6,200
  Month 3: 100% of Budget = $4,000
  Months 4-12: 96% of Budget = $27,000 ($3,000 x 9 months)
                       Total = $39,700

- Reconciliation:
  Average for 12 Months: 104% of Budget
  Average Monthly Bonus at this rate: $4,000
  Bonus for 12 Avg Months: $48,000
  Reconciled Bonus - Actual Bonus = $48,000 - $39,700 = $8,300
  Annual Additional Bonus = $8,300 paid at end of the fiscal year



# EMPLOYEE NON-COMPETE/CONFIDENTIALITY AGREEMENT

In consideration of $10.00 paid by Environmental Data Resources, Inc. ("Company"), the Company's employment of the Employee, and other good and valuable consideration, the receipt and sufficiency of which is duly acknowledged, the Company and Charles Kern ("Employee") hereby covenant and agree as follows:

**1.** <u>Covenant Not to Compete</u>. Employee hereby agrees that for a period of one (1) year from the date of Employee's resignation or termination from the Company, he or she shall not:

(a) alone or with others, directly or indirectly, own, manage, operate, control, participate in the ownership, management, operation or control of, be employed by, contract with, be an agent of, consult with, advise, assist, aid, associate with or be connected in any other manner with any proprietorship, firm, corporation, partnership, joint venture or other entity that:

(i) engages in the collection, development, packaging, and sale or licensing of historical, governmental, geographical, environmental, telecommunications data and information, and informational products or services relating to real estate and/or the telecommunications industry (the "Company Business"); or

(ii) solicit (by in-person visits, marketing, promotion, mail or telephone solicitation and/or advertising) any of the Company Business in the United States (the "Non-Competition Territory"),

Should any court determine that the inclusion of all the Non-Competition Territory, the Company Business and/or time described herein would render any such undertaking unreasonable or unenforceable for any reason, that part of the Non-Competition Territory, the Company Business and/or time which is necessary in the judgment of the court to be circumscribed in order to render such an undertaking reasonable and enforceable shall be deemed free of such non-compete undertaking, but such undertaking shall remain in full force and effect as to the remaining Non-Competition Territory, the Company Business and time, it being the intent and desire of the parties that this Agreement not be rendered void or voidable by the action of such court.

**2.** <u>Confidentiality Covenant</u>. Except in the performance of his or her duties with respect to the Company, or with the express written permission of the Chairman of the Board or Chief Executive Officer of the Company, or except as required by law, Employee shall not, directly or indirectly, use or permit the use of any information concerning the company or its customers of a confidential or proprietary nature, including, but not limited to, customer names, contacts, reports, techniques, operations, business directions, lists, work orders, trade secrets, software, formulae, computer systems, contracts, agreements, know-how, designs, plans, invoices, work records, intellectual property, copyrights patents, paten applications, input codes, data arrangements, production scheduling, introduction dates, development, production or manufacturing processes, and other business, financial or technical information of, or relating to the Company or its customers ("Confidential Information") and shall not reveal, disclose, divulge or make know any Confidential Information is the exclusive property of the Company. All records, papers and documents kept or made by Employee relating to the Company shall be and remain the property of the Company, and shall be delivered by the Employee to or at the direction of the Company.

**3.** <u>Intellectual Property</u>. Employee may during the period of employment make, develop or

conceive inventions, discoveries, concepts, ideas, information and improvements, either patentable or not, which relate to or are useful in the business or activities in which the Company is or may become engaged, and which may or may not also constitute Confidential Information ("Intellectual Property").

Employee agrees to disclose promptly, in writing is so requested, to the Chairman of the Board or Chief Executive Officer of the Company, any Intellectual Property that he may make, develop or conceive during the period of his employment by the Company or by its predecessors or successors in business. All such Intellectual Property shall be and remain the property of the Company. Employee hereby assigns (and agrees to assign) to the Company all Employees rights, title and interest in any such Intellectual Property, whether or not during the period of his Employment such Intellectual Property may be reduced to practice, and to execute all patent applications, assignments and other documents, and to take all other steps necessary, to vest in the Company the entire right, title and interest in to those Intellectual Properties and to any patents obtainable therefor in the United States and in foreign countries.

It is understood and agreed that the Company shall have the royalty-free right to use, or to use, or to adapt and to develop in any way all Intellectual Property conceived or made by Employee, whether or not patentable, including but not limited to processes, methods, formulas, and techniques, as well as improvements thereof or know-how related thereto, or not to use them at all should it so choose.

Except as listed on Appendix A which is attached to this Agreement, Employee will not assert any rights to any inventions, discoveries, concepts or ideas, or improvements thereof or know-how related thereto, having been made or acquired by Employee prior to being employed by the Company, or since then, and not otherwise covered by the terms of this Agreement.

Employee shall not be obligated to assign to the Company any intellectual property made by him or her while in the Company's employ which does not relate to any business or activities in which the Company is or may become engaged, except that he or she is so obligated if the same relates to or is based on confidential or proprietary information to which Employee shall have had access during any by virtue of his employment or arises out of work assigned to him or her by the Company. Nor shall Employee be obligated to assign any intellectual property which may be wholly conceived by Employee after he or she leaves the employ of the Company, except that he or she is so obligated if such intellectual property shall involve the utilization of Confidential Information or other confidential or proprietary information obtained while in the employ of the Company. Nor shall Employee be obligated to assign any intellectual property which is related to or would be useful in any business or activities in which the Company, provided that all such intellectual properties are listed at the time of employment on the attached Appendix A.

4.   **Specific Performance**.  The Employee acknowledges that the restrictions contained in this Agreement are reasonable and necessary for the protection of the business and goodwill of the Company. The Employee agrees that any breach of this Agreement or the possibility of a breach of this Agreement shall cause or threaten the Company with substantial and irreparable harm. Accordingly, in the event of any actual or threatened breach of this Agreement, the Employee agrees that the Company, in addition to such other remedies that may be available at law or in equity, shall be entitled to enforce its rights under this Agreement in by injunctive relief and/or specific performance.

5.   **Enforcement**.  Any action, suit or other legal proceeding that is commenced to enforce any provision of this Agreement, prevent any threatened breach of this Agreement, or in any way relates to any provision of this Agreement shall be commenced only in a state or federal court in the State of

Connecticut and the Company and the Employee each consents to the jurisdiction of such courts. The prevailing party in any such action shall be entitled to recovery of that party's reasonable attorneys' fees, and all costs and expenses incurred in connection with such action.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal as of the date below.

EMPLOYEE:

Date: _____

By: _____

Charles W. Kern

Environmental Data Resources, Inc.

By: _____

Joseph T. Freehill
Regional Vice President



July 11, 2002

Mr. Charles Kern
3540 N.W. 71ˢᵗ Street
Coconut Creek, FL 33073

Dear Charlie,

I regret to inform you that your employment at EDR has been terminated effective immediately.

**EDR Property:**

EDR requires that you mail company property back to Southport (attention Brian Burstiner) immediately. This includes your laptop computer, its carrying case, and all company files and records. Specifically, all records pertaining to EDR's customer base and records obtained recently due to the Vista acqusition must be returned. These materials must be received by EDR no later than July 12, 2002.

Sincerely,

Robert D. Barber
Vice President, Sales