**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHARLES W. KERN, | : | CIVIL CASE NO. |
|     Plaintiff, | : |   3:03cv0233(AVC) |
| VS. | : | |
| | : | |
| ENVIRONMENTAL DATA | : | |
| RESOURCES, INC., | : | |
|     Defendant. | : | JANUARY 21, 2004 |

# LOCAL RULE 56(a)2 STATEMENT

### A.  Material Facts Asserted by the Defendants

1.  Admit.

2.  Admit.

3.  Admit.

4.  Admit.

5.  Admit.

6.  Admit.

7.  Admit.

8.  Admit.

9. Deny to the extent that there were no aerial photographs sold in Florida for approximately the last two years of the plaintiff's employment.  It was only after the plaintiff had been terminated did the defendant renew the sale of aerial photographs in Florida.  Kern Tr. 19, 20, 22.

10. Admit.

11. Admit.

12. Admit to the extent that the plaintiff was required to maintain a specific level of performance. The plaintiff met and exceeded the level, and did not receive any additional warnings. Thereafter the plaintiff subsequently received numerous commendations for his superior job performance.  (See Discovery Response Exhibit 6; Exhibit 7; Exhibit 8; Exhibit 9; Exhibit 10; Exhibit 13; Exhibit 14; Exhibit 16; Exhibit 17; Exhibit 18; Exhibit 19; Exhibit 20; Exhibit 21; Exhibit 22; Exhibit 23; Exhibit 24; Exhibit 26; Exhibit 27; Exhibit 28; Exhibit 29; Exhibit 37; Exhibit 38; Exhibit 39.

13. Admit.

14. Admit.

15. Admit.

16. Deny.  Kern Tr. 46, 47.

17. Admit.

18. Admit.

19. Deny.  Kern Tr. 38.

20. Admit.

21. Admit.

22. Admit.

23. Deny.  The 2001 EDR Travel & Entertainment Expense Policy does not contain the quoted language.  It states, "EDR will reimburse employees for all REASONABLE meals while on company travel."  The underscored word "only" appears in the Memorandum re: Expense Report Policy, May 2, 2002.  See defendant's Tab 9.

24. Admit that the plaintiff, in error, submitted the DSL charge in his June 1, 2002 expense report and in his June 15, 2002 expense report.

25. Deny.  Other than for Barber's self-serving affidavit, there is no evidence that the defendant conducted an investigation into Kern's previously submitted expense reports.  Further, there is no evidence that the plaintiff "engaged in wide-ranging and repeated acts of expense reimbursement fraud."  The phone bills on which the defendant bases its outrageous assertion of "expense reimbursement fraud" were merely mistakes in the plaintiff's submissions for expense reimbursements amounting to $62.17.  That these submissions were nothing more than minor errors was recognized by the defendant's accounting department, as well as by

the plaintiff's immediate supervisor.  Kern Tr. 47, 87, 137, 138.  Discovery Response Exhibit 35, 36.

26. Deny.  There is no evidence to support the claim that the receipts submitted by Kern were for meals "after" he had concluded his work.  The plaintiff submitted receipts for meals he had at the end of his workday, not, as the defendant misrepresents, after his workday had concluded.  Kern Tr. 55, 56, 58, 71, 141-144.

27. Deny to the extent that the defendant implies that these particular expense submissions were in any way fraudulent.  The reports were submitted by the plaintiff without misrepresentation or falsification to the defendant for its approval.  For each of the items the plaintiff was required to submit receipts, which he did.  The defendant's authorized agent specifically approved the reimbursement of these items.  Kern Tr. 55, 56, 58, 71, 141-144.

28. Deny to the extent that the defendant implies that these particular expense submissions were in any way fraudulent.  The reports were submitted by the plaintiff without misrepresentation or falsification to the defendant for its approval.  For each of the items the plaintiff was required to submit receipts, which he did.  The defendant's authorized agent specifically approved the reimbursement of these items.  Kern Tr. 55, 56, 58, 71, 141-144.

29. Deny to the extent that the defendant implies that these particular expense submissions were in any way fraudulent.  The reports were submitted by the plaintiff without misrepresentation

or falsification to the defendant for its approval.  For each of the items the plaintiff was required to submit receipts, which he did.  The defendant's authorized agent specifically approved the reimbursement of these items.  Kern Tr. 55, 56, 58, 71, 141-144.

30. Deny to the extent that the defendant implies that the plaintiff incurred the increase expense to obtain additional points on his credit card.  There is simply no basis for this assertion.  It is pure conjecture.  The defendant is unable to point to any pattern where the plaintiff incurred extra expenses to increase his credit card points.  This is simply a singular instance of at most an error on the plaintiff's part.  But not only was this an error on the plaintiff's part, it was also the defendant's error when it approved the reimbursement.  The plaintiff required the defendant's approval for his expense reimbursements.  The plaintiff did not misrepresent nor falsify the submission he made to the defendant.  The plaintiff truthfully submitted the documents from the conference in his request for reimbursement.   Kern Tr. 55, 56, 58, 71, 141-144.

31. Deny to the extent that the defendant implies that these particular expense submissions were in any way fraudulent.  The reports were submitted by the plaintiff without misrepresentation or falsification to the defendant for its approval.  For each of the items the plaintiff was required to submit receipts, which he did.  The defendant's authorized agent specifically approved the reimbursement of these items.   Kern Tr. 141-144.

32. Deny.  The defendant misrepresents the contents of the Barberio communication. Barberio never claimed that the plaintiff's submissions for reimbursement were fraudulent.  Ms. Barberio referred to them as oversights, and showed the plaintiff how better to track the phone bills.  "I'm sure all of these were simply oversights on your part..."  Discovery Response Exhibit 36.  Further, there is simply no evidence to support the defendant's claim that the plaintiff had "submitted fraudulent reports asking for reimbursement for expenses that he was not entitled to."  The plaintiff did not submit fraudulent reports.  The reports contain truthful information as to the reason and nature of the expenses, as well as where and how the expenses were incurred.  The reports were submitted for approval to the defendant's authorized representative who invariably approved the reimbursements.

33. Deny.  Barber referred to the expense reimbursement issues, as "two mistakes", and "thought it would be time to terminate [plaintiff's] employment at EDR".  Kern Tr. 84.  Barber never mentioned, either in his phone conversation with the plaintiff or in his letter to the plaintiff terminating the plaintiff's employment to any "audit" of the plaintiff's expense reimbursements.  It was only after the plaintiff filed his complaint with the EEOC did the defendant concoct these additional claims of fraudulent behavior on the plaintiff's part. (Discovery Response Exhibit 40; Exhibit 63)  The contemporaneous records of the defendant fail to support the defendant's claims that the plaintiff's termination was the result of

fraudulent conduct.  Prior to the defendant's response to the plaintiff's EEOC complaint, the
defendant cannot point to any written records or documents in which the defendant asserts
that the reason for the plaintiff's termination was his fraudulent behavior.  It relies strictly on
the self serving affidavit of its CEO, Robert Barber.  Noticeably absent from the defendant's
submission is the results of Barber's alleged investigation into the plaintiff's expense
reimbursements.  Kern Tr. 145, 146.

34. Deny.  The plaintiff's claim is based on the offer letter extended to the plaintiff by Joseph T.
Freehill on May 15, 2000.  Discovery Response Exhibit 4.  The plaintiff was entitled to three
weeks vacation pay per year.  As of the date of his termination, the plaintiff had not taken
any vacation days.  Kern Tr. 95-99.

35. Deny.  The defendant takes the plaintiff's statement completely out of context.  The plaintiff
does not base his claim for unpaid wages on his not taking vacation time in prior years of
employment with the defendant.  The plaintiff in making this comment was indicating that,
for him, his job came first, even if it meant sacrificing the vacation time to which he was
entitled.  Kern Tr. 98.  The plaintiff was clear in his testimony; on January 1, 2002, the
plaintiff was entitled to three weeks in vacation time.  Because he did not use the vacation
time, he was entitled to payment for three weeks vacation when the defendant terminated his
employment.  Kern Tr. 98.

36. Deny.  The defendant wrongfully prorated the vacation time to which the plaintiff was entitled.  Kern Tr. 98.  In this fashion the defendant reduced the amount of time owing to the plaintiff from 30 days to 7 days.  The defendant's vacation policy contradicts the defendant's assertion; vacation time, floating holidays and sick time do not accrue on a daily, weekly or monthly basis, they fully vest at the start of a new year.  Kern Tr. 98; Discovery Response Exhibit 4.  The check received by Kern, which he did not accept, did not pay him the amount to which he was entitled as unpaid wages.  Further, the payment was made to the plaintiff only after he commenced the present litigation.  In fact, the defendant wrongfully attempted to condition payment of the plaintiff's unpaid wages on the signing by the plaintiff of a separation agreement.  Discovery Response Exhibit 47.

37. Admit.

38. Admit.

39. Admit.

40. Deny.  The plaintiff asserts in this litigation that the non-compete agreement was legally non-enforceable.

41. Admit.

42. Admit.

43. Admit.

44. Deny that the plaintiff solicited accounts of ATC, MacTec, PSI and Terracon regarding their business operations in the State of Florida for the benefit of First Search. Kern Tr. 108.

45. Admit.

46. Deny. The plaintiff was never part of the defendant's price decision management. Kern Tr. 140-141.

47. Deny. Kern Tr. 114-116, 140-141.

48. Admit.

49. Admit.

50. Admit.

51. Deny. Kern Tr. 118.

52. Admit that the letter from First Search to Kern stated as much.

53. Deny. The relationship to which the defendant refers was between First Search and the plaintiff's company, Environmental Reports, Inc. Defendant's Appendix at Tab 15. Environmental Reports, Inc. was considered an independent contractor not an "agent" of First Search. Defendant's Appendix at Tab 15 and Tab 18.

54. Admit.

55. Admit.

56. Deny.  Kern knows that Dusault stated to him that she did in fact submit phone bills and/or other requests for reimbursement more than once, as he did.  Kern Tr. 88-92, 132, 133.

57. Deny.  The defendant had knowledge of Allyson Dusault engaging in the type of conduct engaged in by Kern.  Kern Tr. 88-92, 132, 133.

58. Admit.

59. Deny.  The defendant misstates the import of Kern Tr. 138.  It is devoid of any support for the defendant's assertion.

60. Admit, but the defendant took no action against the plaintiff until he filed his complaint of discrimination with the EEOC.

61. Kern answered the counterclaim on December 23, 2003.  No default had previously been entered against the plaintiff for not answering the defendant's counterclaim.

**B.  Issues of Material Fact As To Which It is Contended There Is A Genuine Issue To Be Tried**

1. The plaintiff signed a document entitled "Employee Non-Compete/Confidentiality Agreement" on May 17, 2000 prepared by the defendant without any discussion with the plaintiff.  Kern Tr. 41.

2.  The plaintiff signed the "Employee Non-Compete/Confidentiality Agreement" on May 17, 2000 because if he did not sign the document, he would lose his job.  Kern Tr. 41.

3. The plaintiff did not receive the payment of the $10.00 to which the "Employee Non-Compete/Confidentiality Agreement" made reference as consideration for Kern signing the agreement.  Kern Tr. 40, 41.

4. The plaintiff for a period of time in excess of eight years was permitted by the defendant to submit expense reimbursement applications for lunches taken at the end of the workday where the plaintiff had worked through lunch.  Kern Tr. 55, 56, 58, 71.

5. The plaintiff did not falsify any expense reimbursement applications.  He accurately listed the date, time and place for each lunch the expense of which he sought reimbursement.  Kern Tr. 141-144.

6. The plaintiff submitted his expense reimbursement reports to his supervisor for review and approval.  The plaintiff's supervisor never questioned the plaintiff's long time established practice of working through lunch and eating at the end of his workday for which he sought reimbursement from the defendant for the expense of the meal.  Kern Tr. 141-144.

7. It was only after the plaintiff charged the defendant with age discrimination did it question the plaintiff's meal reimbursements.  Kern Tr. 145, 146.

8. The defendant never questioned the plaintiff with regard to his expense reimbursement reports at any time prior to his filing a complaint of age discrimination against the defendant.  Kern Tr. 145, 146.

9. There are no written documents that were in existence prior to the time the plaintiff filed a charge of age discrimination against the defendant which either question or reprimand the plaintiff for submitting expense reimbursement requests for lunch meals consumed at the end of the plaintiff's workday where the plaintiff had worked through lunch.

10. When informed of his termination by the defendant, the plaintiff was told that he was being fired because he had submitted the same bill for reimbursement on two occasions.  The defendant did not mention any other reason for the plaintiff's termination.  Kern Tr. 84, 145, 146.

11. The letter of termination given the plaintiff by the defendant did not provide any reason for the plaintiff's termination.  Discovery Response Exhibit 40.

12. The defendant did not terminate the employment of another of its regional manager, Ali Dusault, who was younger than the plaintiff and who made similar expense report errors.  Kern Tr. 88-92, 132, 133.

13. The plaintiff was replaced in his position of regional manager by two employees who were twenty-five years of age.  Kern Tr. 138.

14. The plaintiff having been employed by the defendant in excess of five years was entitled to three weeks vacation each year.  Kern Tr. 96, 97, 98;  Exhibit 101 - Letter from Buckstein to Bucci.

15. The plaintiff was also entitled to four floating holidays each year.  Exhibit 101 - Letter from Buckstein to Bucci.

16. The defendant sent the plaintiff a check in the amount of $902.31, dated February 24, 2003, which was over seven months after the termination of the plaintiff's employment and after the commencement of this litigation, which check the plaintiff has never cashed. Exhibit 101 - Letter from Buckstein to Bucci.

17. The defendant compensated the plaintiff for "seven accrued and unused vacation/holidays", because "[w]hen Mr. Kern was discharged on July 11, 2002, he had accrued 58% of his vacation/holiday time, or 11 days, and had used four days.  Exhibit 101 - Letter from Buckstein to Bucci.

18. The plaintiff was entitled to pay for his entire vacation and floating holidays, nineteen days. Kern Tr. 96-99.

19. Pursuant to the policy of the defendant, vacation and floating holidays accrued in full on the first day of January of each year.  Kern Tr. 96-99.

20.  The defendant failed to compensate the plaintiff for the full amount of accrued vacation time and the floating holidays to which he was entitled when his employment with the defendant was severed.  Kern Tr. 96-99.

21. The plaintiff at the time of his termination had not used any vacation days.

22. Vacation and holiday reimbursement were to be compensated not on the basis of base salary alone; vacation pay was based on salary plus commission. For the year 2002, the plaintiff was tracking 112% of his base salary. Kern Tr. 134.

23. The defendant's calculation of the amount owed the plaintiff for accrued vacation time and holidays is erroneous for the following reasons:

    a. It failed to accrue the plaintiff's full vacation time and holidays, a total of 19 days;

    b. It incorrectly asserts that the plaintiff used four vacation days when he had not used any vacation time;

    c. It calculated the plaintiff's payment on base salary alone, instead of factoring in the plaintiff's commissions.

24. The plaintiff possessed the qualifications for employment as the defendant's regional manager for the state of Florida.

25. The plaintiff, at the time of his termination, was over forty years of age. Kern Tr. 8.

26. The plaintiff, at the time of his termination, was performing his job duties in an excellent manner. (See Discovery Response Exhibit 6; Exhibit 7; Exhibit 8; Exhibit 9; Exhibit 10; Exhibit 13; Exhibit 14; Exhibit 16; Exhibit 17; Exhibit 18; Exhibit 19; Exhibit 20; Exhibit

21; Exhibit 22; Exhibit 23; Exhibit 24; Exhibit 26; Exhibit 27; Exhibit 28; Exhibit 29; Exhibit 37; Exhibit 38; Exhibit 39.

27. The defendant falsely claimed to the United States Equal Employment Opportunity Commission that the plaintiff was performing his job duties adequate at best. (Discovery Response Exhibit 63).

28. The defendant originally recognized that the errors in the plaintiff's expense reimbursement reports were legitimate errors and did not involve issues of fraud. (Discovery Response Exhibit 35, 36).

29. The defendant did not question nor seek an explanation from the plaintiff at any time prior to his termination regarding his submission of fraudulent expense reports to the defendant. Kern Tr. 145, 146.

30. The plaintiff followed the defendant's policy regarding the submission of expense reports seeking reimbursement for meals and mileage incurred while employed by the defendant. Kern Tr. 144, 145.

31. Over an eight-year period of time through the date of the plaintiff's termination, the plaintiff's supervisor and the defendant's accounting department never questioned the propriety of the plaintiff's submission of expense reports seeking reimbursement for lunches

consumed at the end of the plaintiff's workday, and not necessarily during the traditional lunchtime hours.  Kern Tr. 55, 58, 72, 145.

32. The plaintiff did not conceal the dates, times and places when and where he was had lunch for which he sought reimbursement from the defendant.  Kern Tr. 141, 142.

33. The plaintiff did not seek meal reimbursements on days for which he was not entitled to such reimbursement.  Kern Tr. 142-144.

34. The defendant did not at any time prior to the plaintiff filing a complaint of age discrimination with the United States Equal Employment Opportunity Commission proffer charges against the plaintiff with any civil agency, i.e. unemployment compensation commission or criminal justice agency that the plaintiff had been guilty of submitting fraudulent expense reports, nor did it institute litigation against the plaintiff in which it asserted such claims.  (Discovery Response Exhibit 60).

35. Although the defendant had the opportunity prior to August 26, 2002 to submit information to the Florida Agency for Workforce Innovation Unemployment Compensation Program Claims and Benefits which would substantiate its claim that the plaintiff had submitted fraudulent expense reports, it failed to do so.  (Discovery Response Exhibit 60).

36. Prior to the plaintiff commencing the present action on February 5, 2003, the defendant did not assert any claim against the plaintiff in which it sought the recovery of monies it now claims it is owed based on the plaintiff's alleged fraudulent conduct.

37. It was in a counterclaim submitted in the present action and dated March 28, 2003 that the defendant first asserted a claim that it was owed money as a result of what it alleges to be the plaintiff's fraudulent conduct.

38. Other than for Rob Barber's self-serving affidavit, the defendant has not submitted any documentary evidence that contains Rob Barber's "audit" of the plaintiff's expense reports that allegedly demonstrated that the plaintiff had committed fraud.

39. The plaintiff did not believe, as inferred by the defendant, that he was entitled to a meal each day he was employed by the defendant.  On various occasions the plaintiff did not submit for reimbursement of meals for days he was employed by the defendant.  Kern Tr. 142-144.

40. The plaintiff was the oldest in age of the defendant's regional managers.  Kern Tr. 88,

41. The plaintiff executed the non-compete agreement on May 17, 2000 because he did not want to lose his job.  Kern Tr. 41.

42. The plaintiff was required to execute the non-compete agreement or lose his employment with the defendant.  Kern Tr. 41.

43. The non-compete agreement executed by the plaintiff on May 17, 2000 was unrestricted as to its geographic coverage.  Discovery Response Exhibit 4.

44. At the time the plaintiff was required to execute the non-compete agreement in 2000, he did not receive any additional consideration; in fact, his salary was reduced.  Kern Tr. 40-44.

45. After the plaintiff was fired by the defendant, he entered into an independent contractor agreement, on November 1, 2002, with FirstSearch Technology Corporation, a competitor of the defendant.  Discovery Response Exhibit 50.

46. The plaintiff voluntarily excluded his contractual activities with FirstSearch Technology from the state of Florida, where his work for the defendant was concentrated.  Kern Tr. 102, 103.

47. In a letter to Ted Minkler of FirstSearch Technology dated November 25, 2002, Robert D. Barber, Vice President of the defendant, expressed that "Mr. Kern's departure to First Search is of great concern to EDR..."  Discovery Response Exhibit 50.

48. In a letter to the plaintiff dated November 25, 2002, Robert D. Barber, Vice President of the defendant, warned the plaintiff that "[w]e would consider any employment with First Search Technology ("First Search") to be a breach of your Non-Compete/Confidentiality Agreement..."  Discovery Response Exhibit 51.

49. Despite FirstSearch Technology's assurance that the plaintiff had not been hired by it as an employee, the defendant communicated to FirstSearch Technology that "Mr. Kern's efforts to sell or 'promote' the Environmental FirstSearch product is in direct violation of his Agreement."  Discovery Response Exhibit 54.

50. By letter to the plaintiff, dated January 13, 2002, FirstSearch Technology Corporation terminated its contractual arrangement with the plaintiff.  Discovery Response Exhibit  55.

51. The offer of employment dated May 15, 2000 sent to the plaintiff by the defendant, and signed by the plaintiff stated:

    a.   "The Agreements and all questions or disputes concerning the construction, validity and interpretation of the Agreements shall be governed by the law of the State of Connecticut and without giving effect to any choice or conflicts of law principles."

    b.   "If for any reason, any provision or provisions of the Agreements is or are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect of those provisions of the Agreements that are valid."

    c.  The Agreements constitute the entire agreement and understanding of the

parties with respect to the subject matter thereof, and supersede any previous

understandings or agreements, whether oral or written, express or implied...”

52. The non-compete agreement executed by the plaintiff on May 17, 2000 applied to a

geographical area that encompassed the entire United States.  Discovery Response Exhibit 4.


THE PLAINTIFF – CHARLES KERN


BY_____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Fed. Bar #ct07805

## CERTIFICATION

I hereby certify that copies of the foregoing *Local Rule 56(a)2 Statement* have been sent, by First Class Mail, postage prepaid, on this 21st day of January, 2004, to:


Brian D. Buckstein, Esq.
Fed. Bar #ct24543
Mark E. Zelek, Esq.
Fed. Bar #25202
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
Miami, FL 33131-2339
Tel: (305) 415-3380
Fax: (305) 415-3001

Sarah Poston, Esq. For
Fed. Bar #17902
ZELDES, NEEDLE & COOPER, P.C.
1000 Lafayette Blvd
P.O. Box 1740
Bridgeport, CT 06601-1740
Tel: (203) 333-9441
Fax: (203) 333-1489


_____
Thomas W. Bucci