UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------X
CHARLES W. KERN,                                :
                                                :
            Plaintiff,                          :
                                                :   3:03 CV 0233 (AVC)
    -against-                                   :
                                                :
ENVIRONMENTAL DATA                              :
RESOURCES, INC.                                 :
                                                :
            Defendant.                          :   February 13, 2004
---------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AS TO ALL OF PLAINTIFF'S CLAIMS
AND AS TO LIABILITY ON DEFENDANT'S COUNTERCLAIMS**

Pursuant to FED. R. CIV. P. 56, and Rule 7(d) of the Local Civil Rules of the United States District Court for the District of Connecticut, Defendant Environmental Data Resources, Inc. ("EDR"), respectfully submits this Reply Memorandum of Law in further support of its Motion for Summary Judgment.

**PRELIMINARY STATEMENT AND PROCEDURAL HISTORY**

A review of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), reveals that Plaintiff has no admissible evidence to justify a trial on any of his claims. Indeed, perhaps realizing this inescapable truth, Plaintiff elected not to conduct *any* discovery in this matter. Plaintiff has not attempted to depose the decision-maker, Robert Barber, has not submitted any affidavits in opposition to EDR's Motion, and has not asked EDR to produce any documents or information.

Plaintiff's Opposition is replete with conclusory allegations, unsubstantiated assertions, and wild and fanciful theories. Critically, however, the law requires more than Plaintiff's unabashed theories and conjecture to survive summary judgment, it requires *admissible* evidence

sufficient to create a triable issue concerning a *material* fact.  Because Plaintiff's Opposition fails to establish any material issues of fact, his Complaint should be dismissed with prejudice.

A. **Plaintiff's Age Discrimination Claim Must Be Dismissed Because He Has Failed To Establish That EDR's Proffered Reason For Terminating His Employment Is A Pretext For Invidious Age Discrimination**

There is no dispute that EDR has proffered a legitimate non-discriminatory reason for its decision to terminate Plaintiff's employment – his misuse of EDR's expense reimbursement system.  See Appendix in Support of EDR's Motion ("Appendix"), Tab 1, ¶¶ 11-13.  Plaintiff's Opposition has failed to offer *any admissible evidence* that this proffered reason is false or that EDR's real reason for its action was invidious age discrimination.  See Opp. pp. 18-28.

Plaintiff's Opposition repeatedly suggests that EDR fabricated its business decision, but offers no evidence to substantiate this baseless contention.  Indeed, the undisputed evidence in this case establishes that Mr. Barber conducted an investigation *before Plaintiff was terminated* and uncovered numerous expense reimbursement practices that he found inappropriate and which he believed justified termination.  See Appendix, Tab 1, ¶¶ 11-13.  Plaintiff has simply no evidence that disputes EDR's contention.  In fact, despite the rhetoric contained in his Opposition, Plaintiff testified that he did not know whether or not an investigation into his expense reimbursement practices was conducted.  See Kern Tr. 48 ("Q: During the time frame of July 9th, when you first learned that there were issues with your expense reimbursements, until the time you were terminated, are you aware that Mr. Barber conducted an investigation of your expenses?  A: No, I'm not."); Kern Tr. 83 ("Q: And you have already testified that you are unaware of the fact that Mr. Barber, who was cc'd on Kelly Ann's e-mail to you, then conducted an audit of your expense reports, correct?  A: Correct.").  Plaintiff's unsubstantiated claim that EDR fabricated its decision to terminate Plaintiff's employment *after* he was discharged is

untenable and belied by the uncontroverted record.[1]

Plaintiff recognizes that the law requires him to establish that his age actually motivated EDR's decision. See Opp. p. 19. Plaintiff, however, fails to establish that his age had anything to do with EDR's decision to terminate his employment. To the contrary, the uncontroverted record establishes that Plaintiff: (i) was hired when he was 40, in the ADEA protected class (Appendix, Tab 3, Kern Tr. 9, 133), (ii) was treated fairly and cordially throughout his employment (Appendix, Tab 3, Kern Tr. 34, 84), (iii) has not identified a single discriminatory comment or action while he was employed by EDR, and (iv) has not adduced any admissible evidence that he was treated differently than similarly situated younger employees. Plaintiff's Opposition does not introduce a single piece of evidence of discriminatory animus.

Finally, Plaintiff's Opposition makes two additional spurious arguments that warrant brief attention and must be rejected. First, Plaintiff claims that EDR's failure to provide him with a full and complete explanation of its reason for his discharge establishes pretext. See Opp. at 24. This contention is disingenuous and undermined by well-settled law. At the time of Plaintiff's discharge, Plaintiff was an at-will employee. See Appendix, Tab 6, p. 2. EDR did not have any obligation to provide Plaintiff with any explanation for its decision to terminate him. Nevertheless, Plaintiff *was* informed that he was being terminated for expense reimbursement issues. See Appendix, Tab 3, Kern Tr. 83-8; Tab 1 at ¶ 15; Kern Tr. 94 ("A: He said he had found the accounting errors, and *I assumed* that he was referring to the two accounting errors that had been brought to my attention by Joe and Kelly Ann."). Second, Plaintiff claims that EDR's reason for his discharge is a pretext for discrimination because his work quality and productivity

---

[1] Plaintiff has made no effort to support his baseless allegations. Plaintiff elected not to depose Mr. Barber, not to propound interrogatories, and not to serve document requests. Furthermore, EDR identified documents that Mr. Barber relied upon in making his decision to discharge Plaintiff. See Tab A. Plaintiff never requested these documents.

was "superior." See Opp. 18-28. This argument is a red herring. Plaintiff *was not* terminated because of the quality of his work or his sales productivity. Plaintiff was discharged, *and he was told he was discharged*, because of his expense reimbursement submissions. Kern Tr. 94.

For the foregoing reasons, Plaintiff's conclusory and unsubstantiated claim for age discrimination must be dismissed with prejudice.

**B.   Plaintiff's Claim For Retaliation Must Be Dismissed Because He Has Failed To Establish a Causal Connection Between His Protected Activity and the Alleged Retaliatory Conduct**

Plaintiff's retaliation claim alleges that EDR's counterclaims in this lawsuit were concocted and filed *because* he engaged in protected activity – filing a claim with the EEOC in December 2002. See Opp. p. 31. Plaintiff's claim is untenable.

The record in this case establishes that there is no causal connection between Plaintiff's protected activity and EDR's counterclaims. Indeed, the record confirms that EDR contemplated filing, and Plaintiff was aware of the substance of, the counterclaims at least five months *prior to* Plaintiff's protected activity. The record is replete with documentary evidence undermining Plaintiff's claim. First, Plaintiff admits that on April 11, 2002, Mr. Barber informed him of the substance of several of EDR's counterclaims -- that EDR had become aware of accounting errors made by Plaintiff. See Appendix, Tab 3, Kern Tr. 83-84 ("He said he had found accounting errors. . ."). Second, immediately after Plaintiff was discharged, EDR and Plaintiff engaged in settlement negotiations and the issue of EDR filing counterclaims was addressed. See Appendix, Tab 3, Kern. Tr. 138 ("they spoke of counterclaims in the separation agreement"). Third, on August 9, 2002, Mr. Barber wrote to Plaintiff in response to a threatening letter by Plaintiff and stated that "EDR will counterclaim for all amounts owed to EDR as a result of the expense reports you submitted in duplicate." See Docket No. 25, Ex. 44. Finally, on November 25,

4

Case 3:03-cv-00233-AVC   Document 32   Filed 02/13/2004   Page 5 of 11

CASE NO. 303-CV-0233-AVC

2002, EDR sent Plaintiff a letter apprising him of its concern that he was acting in violation of the non-compete agreement and cautioning that it his unlawful conduct was confirmed, it would pursue all available remedies under law. See Appendix, Tab 16. These four pieces of evidence, *all preceding Plaintiff's protected activity*, establish that the counterclaims were not asserted because Plaintiff engaged in protected activity.

Plaintiff's claims that the aforementioned events did not apprise Plaintiff of the full breadth of the counterclaims and that the counterclaims were not filed until *after* he filed his EEOC Charge are factually and legally unavailing. First, EDR had no obligation to divulge trial strategy, attorney work-product, and key documentation confirming Plaintiff's culpability during pre-litigation communications with Plaintiff. Plaintiff has pointed to no precedent for such a proposition. Second, EDR had every right to make a business decision that analyzed and balanced the costs and attorneys' fees associated with *initiating* litigation against Plaintiff, the possible damages award in such a litigation, and the costs and attorneys' fees associated, *if any*, in asserting compulsory counterclaims in an ongoing litigation. Plaintiff's notion that EDR can only claim and not counterclaim against former employees is implausible.

The disingenuous nature of Plaintiff's Opposition is confirmed by internal inconsistencies. In one section Plaintiff states: "the defendant did not even threaten such action," and "[a]s previously noted, the defendant had never threatened to sue the plaintiff. . .." However, elsewhere in his Opposition Plaintiff states, referring to a November 25, 2002 letter he received from EDR: "the defendant threatened litigation to enforce the terms of the non-compete agreement." Compare Pl.'s Opp. p. 31 with p. 35.

For the foregoing reasons, Plaintiff's retaliation claim should be dismissed.

**C.   Plaintiff's Claim Under The Connecticut Wage Payment Statute Must Be Dismissed**

Plaintiff does not dispute that he never worked in Connecticut. Rather, Plaintiff claims that because EDR has its headquarters in Connecticut it can be found liable under the Connecticut Wage Payment Statute ("CWPS"). See Opp. p. 33. Plaintiff, however, offers no legal precedent for this proposition and makes no effort to dispute or distinguish the only Connecticut authority on this point, which holds directly to the contrary. Kubas v. Hartford Financial Servs., Co., No. X07CV 000073192S, 2000 WL 1170237 (Conn. Sup. July 19, 2000) ("Individuals employed outside the state of Connecticut are subject to wage payment laws of the states in which they are employed and are not afforded the protection of the Connecticut statute.") (attached at Tab B). Accordingly, Plaintiff's CWPS claim should be dismissed.

Furthermore, as will be established in Section D *infra*, Plaintiff has failed to establish through admissible evidence that he is entitled to any additional "wages" from EDR. Accordingly, for this additional reason, Plaintiff's CWPS claim must be dismissed.

**D.   Plaintiff's Breach Of Contract Claim Must Be Dismissed**

Plaintiff asserts a breach of contract claim against EDR for allegedly failing to pay vacation, holiday, and sick pay. Plaintiff's claim is baseless and unsupported by the record.

Plaintiff's employment with EDR terminated in April 2002. Plaintiff makes unsubstantiated assertions that he has an entitlement *to be paid* for all vacation, holiday, and sick days he *would have* been entitled *to use* in 2002. See Opp. pp. 12-13, 33. There is simply no evidence to support this claim. Indeed, the very agreement Plaintiff alleges has been breached does not provide for *payment* for unused vacation, holiday, and sick days. See Appendix, Tab 6.

Plaintiff asserts that his wage claim is based on his May 15, 2000 employment offer with EDR. See Kern Tr. 96 (Q: But your wage claim is based on Exhibit 4, which is the May 15,

6

2000 employment agreement; is that what you're saying?  A:  Yeah, I believe it is.").  That agreement, by its express terms, does not provide for the *payment* of unused vacation, holiday, and/or sick days after an employee resigns or is discharged.  See Appendix, Tab 6.

Plaintiff appears to contend additionally or alternatively that there is some "policy" for making payments to former employees for unused vacation pay.  See Opposition at p. 33.  However, Plaintiff has failed to offer any admissible evidence concerning this "policy."  As a matter of law, Plaintiff's unsubstantiated allegations do not create a triable issue of fact as to this claim.  See, e.g., Weston Chemical, Inc. v. Diamond Fertiliser & Chemical Corp., CIV. No. B-87-537 (WWE), 1990 WL 128235, *8 n. 1 (D. Conn. July 2, 1990) (finding that plaintiffs could not create a triable issue of fact by simply making unsupported, conclusory allegations).

Because Plaintiff has failed to offer any evidence to support his breach of contract claim based on express contract or policy, his claim for breach of contract should be dismissed.

**E.     Plaintiff's Tortious Interference Claim Must Be Dismissed**

Plaintiff claims that EDR communicated with First Search Technology and this resulted in First Search terminating its independent contractor relationship with Plaintiff.  Plaintiff, however, has failed to set forth admissible evidence showing any of the requisite elements of a claim for tortious interference with contract.  See Motion at pp. 13-14.  Indeed, the record contains no evidence to support Plaintiff's claim that: (i) EDR had knowledge of Plaintiff's contractual relationship with First Search, (ii) that EDR intended to interfere with that relationship, (iii) that any interference by EDR with Plaintiff's relationship with First Search was tortious, or (iv) that EDR's conduct was the cause of a loss by Plaintiff.

There are two glaring and dispositive defects in Plaintiff's claim.  First, Plaintiff has failed to establish that EDR engaged in tortious conduct.  To have made such a showing, Plaintiff would have had to present admissible evidence of fraud, misrepresentation, intimidation,

7

obstruction or malicious actions by EDR towards Plaintiff or First Search. Subsolutions, Inc. v. Doctor's Associates, Inc., 62 F. Supp. 2d 616, 628 (D. Conn. 1999). Plaintiff has not done so. Second, the record in this case establishes that EDR did not cause any loss to Kern. See Appendix, Tab 18. Specifically, Plaintiff produced a letter from First Search that explained that First Search was terminating the contractual relationship, because "we as a network no longer wish to be bound to pay the monthly retainer or travel reimbursement." See Appendix in Support of EDR's Motion for Summary Judgment, Tab 18. Accordingly, the undisputed evidence establishes that business reasons, not EDR, caused First Search to terminate its contractual relationship with Kern.

For the foregoing reasons, Plaintiff's tortious interference claim must be dismissed.

**F.      Plaintiff's Non-Compete Agreement Is Fully Enforceable.**

Plaintiff's Amended Complaint seeks to enjoin EDR from enforcing its non-compete agreements signed by Plaintiff. Plaintiff's Opposition contends, unbelievably, that the 2000 non-compete signed by Plaintiff is unenforceable for lack of consideration, but that it nonetheless supersedes and extinguishes the 1994 agreement. See Opp. 39.

Plaintiff's Opposition takes irreconcilable positions. First, Plaintiff claims that the 2000 agreement is enforceable because it supersedes the 1994 agreement. See Opp. p. 37.[2] Then, Plaintiff claims the 2000 agreement is not enforceable for lack of consideration. See Opp. p. 39. Plaintiff cannot have it both ways. Either the 2000 agreement (which is the offer letter **and** non-compete (see Appendix, Tab 6 introductory paragraph)), is enforceable or the 1994 agreement is enforceable. Plaintiff cannot claim that the 2000 agreement is unenforceable, but that it nonetheless extinguished the 1994 agreement. See, e.g., Timely Prods. Inc. v. Constanzo, 465

---

[2]    As discussed previously, Plaintiff also claims that the 2000 agreement is enforceable as it is the basis for his wage claim. See Kern Tr. 96.

F.Supp. 91 (D. Conn. 1979) (finding that it is a general principle of contract law that when an unenforceable substituted agreement is nullified both as an executory agreement and as a discharge of a prior contract, the prior agreement remains enforceable).

Whether or not the 1994 or 2000 agreement is found to be operative, both agreements are proper under the governing standards for enforcement of restrictive covenants. See Motion at p. 16. Specifically, the 1994 non-compete agreement has a two year restrictive covenant and is limited to very specific industries: those that engage in "collection manipulation and distribution of government information about hazard/Toxic sites." See Appendix, Tab 4. Moreover, the 1994 agreement expressly permits any and all kinds of environmental consulting during the period of restraint. See Tab 4, ¶ 1. The 2000 agreement provides for an even briefer time restriction – one year – and contains a virtually identical industrial scope restriction. See Appendix Tab 6.

Because EDR's 1994 and 2000 non-compete agreements are reasonable in time and scope, Plaintiff's claim to enjoin EDR from enforcing its non-compete agreements should be dismissed.

### III.   CONCLUSION

Plaintiff has failed to conduct discovery, to submit any declarations or affidavits in opposition to Defendant's Motion, or to produce any admissible evidence to create a triable issue of fact as to any of his claims. Moreover, the record is undisputed that: (i) EDR had a legitimate and non-discriminatory reason for terminating Plaintiff's employment and Plaintiff has not established it was pretextual; (ii) Plaintiff was aware that EDR contemplated counterclaims *before* Plaintiff filed his EEOC charge; (iii) Plaintiff was employed in Florida for all relevant times and the CWPS does not apply to employees employed outside of Connecticut; (iv) Plaintiff

9

has failed to produce admissible evidence of an agreement, policy, or practice requiring EDR to pay accrued vacation, holiday, and/or sick pay; (v) Plaintiff has failed to establish that EDR engaged in tortious conduct that caused Plaintiff to lose a contractual relationship; and (vi) Plaintiff has failed to establish that EDR's non-compete agreements are unenforceable.

Because all Plaintiff's claims are unsupported by the record, summary judgment should be entered for EDR on all of Plaintiff's claims. Additionally, because Plaintiff has failed to respond to EDR's counterclaims and the record confirms their validity, EDR respectfully requests that the Court enter summary judgment for EDR on its counterclaims and schedule a trial on damages. Finally, EDR respectfully requests that the Court award it fees and costs incurred in defending this action and award such other and further relief as this Court deems just and proper.

DATED this 13th day of February, 2004.

                                                Respectfully submitted,

                                                Morgan, Lewis & Bockius LLP

By: _____
    Mark E. Zelek
    Ct. Fed Bar No. ct25203
    Brian D. Buckstein
    Ct. Fed Bar No. ct24543
    bbuckstein@morganlewis.com
    5300 Wachovia Financial Center
    200 South Biscayne Boulevard
    Miami, Florida 33131-2339
    Telephone:   305.415.3303
    Facsimile:   305.415.3001

Sarah Poston, Esq.
Ct. Fed Bar No. ct19702
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd.
P.O. Box 1740
Bridgeport, CT 06601-1740
Telephone: (203) 333-9441
Facsimile: (203) 333-1489

## CERTIFICATE OF SERVICE

    I certify that the foregoing has been furnished to counsel for Plaintiff, Thomas W. Bucci, Esq., Willinger, Willinger & Bucci, P.C., 855 Main Street, Bridgeport, CT 06604 by U.S. mail this 13th day of February, 2004.

_____

Sarah Poston