UNITED STATES DISTRICT COURT    FILED
DISTRICT OF CONNECTICUT

CHARLES W. KERN,                    :            2004 AUG 13  P 2: 30
    Plaintiff                       :
                                    :               U.S. DISTRICT COURT
VS.                                 : Civil No. 3:03-CV-0233B (AVC)T.
                                    :
ENVIRONMENTAL DATA                  :
RESOURCES, INC.,                    :
    Defendant.                      :

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for damages and equitable relief. It

is brought pursuant to the Connecticut Wage Payment Statute,

Conn. Gen. Stat. § § 31-71(c) and 31-71 (k), the Age

Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et

seq., and common law tenets concerning tortious interference

with business opportunities, breach of contract, and

retaliation.

The defendant, Environmental Data Resources, Inc.

("EDR"), have filed the within motion for summary judgment,

pursuant to Rule 56 of the Federal Rules of Civil Procedure,

asserting that there are no genuine issues of material fact

and that they are entitled to judgment as a matter of law.

The issues presented are: 1) whether the plaintiff,

Charles W. Kern ("Kern") is entitled to compensation under

the Connecticut Wage Payment Statute, Conn. Gen. Stat. §§

31-71(c) and 31-71(k); 2) whether the defendant, EDR,

tortiously interfered with Kern's business opportunities; 3)

1

whether the applicable non-competition covenant with respect
to employment is enforceable; 4) whether EDR breached its
contract for payment of wages; 5) whether EDR unlawfully
terminated Kern because of his age; and 6) whether EDR
retaliated against Kern for filing an age discrimination
complaint with the United States Equal Employment
Opportunity Commission ("EEOC"). For the foregoing reasons
contained herein, the defendants' motion for summary
judgment is GRANTED in part and DENIED in part.

## FACTS

Examination of the complaint, affidavits, declarations,
pleadings, Local Rule 56 statements, and exhibits
accompanying the motion for summary judgment, and the
responses thereto, disclose the following undisputed,
material facts.

On June 23, 1994, EDR, an environmental consulting
firm, offered Kern a job as a regional manager with a start
date of July 5, 1994. Kern was responsible for EDR's
business in the Southern region of the United States, which
comprised Florida, Georgia, North Carolina, South Carolina,
Alabama, Mississippi, and Tennessee. Kern was forty years
of age. As a condition of employment, EDR required Kern to
sign an "Employee Non-Compete/Confidentiality Agreement,"

("1994 agreement").[1]  Kern accepted the offer and began

working.  There was no employment contract.

In May 2000, EDR restructured its business and changed

Kern's employment responsibilities.  Kern lost control of

the Southern region and became responsible for the sale of

EDR products exclusively in Florida.  On May 15, 2000, EDR

gave Kern a new employment agreement with new restrictive

covenants, which he signed on May 17, 2000 ("2000

agreement").  The 2000 agreement provided, inter alia:

> Employee hereby agrees that for a period of one
> (1) year from the date of Employee's resignation
> or termination from the Company, he or she shall
> not: (a) alone or with others, directly or
> indirectly, own, manage, operate, control,
> participate in the ownership, management,
> operation or control of, be employed by, contract
> with, be an agent of, consult with, advise,
> assist, aid, associate with or be connected in any
> other manner with any proprietorship, firm,
> corporation, partnership, joint venture or other
> entity that (i) engaged in the collection,
> development, packaging, and sale or licensing of
> historical, governmental, geographical,
> environmental, telecommunications data and
> information, and information products or services
> relating to real estate and/or telecommunications
> industry (the "Company Business"); or (ii) solicit
> (by in-person visits, marketing, promotion, mail
> or telephone solicitation and/or advertising) any

---

[1] The 1994 agreement provided, inter alia: "Employee hereby agrees that he or she will not for a period of two (2) years from the date of Employee's resignation or termination from the Company, alone or with others, directly or indirectly, own, manage, operate, control, participate in the ownership, management, operation or control of, be employed by, contract with, be an agent of, consult with , advise, assist, aid, associate with or be connected in any other manner with any proprietorship, firm, corporation, partnership, joint venture or other entity engaged in a competing business that engages in the collection manipulation and distribution of government information about hazard/Toxic sites, (the "Company Business"), or solicit (by in-person visits, marketing, promotion, mail or telephone solicitation and/or advertising) any of the Company Business in the United States (the "Non-Competition Territory")."

of the Company Business in the United States (the "Non-Competition Territory"

Kern was employed with EDR from July 25, 1994 to July 11, 2002.  Throughout this time Kern received positive performance reviews from EDR.

EDR's Expense Report Policy, dated February 2001, provides that "EDR will reimburse employees for all REASONABLE meals while on company travel."  Also, "EDR will reimburse a maximum of $125.00 per month for the use of mobile phones." EDR, thereafter, by memo dated May 2, 2002, set forth expense reporting policies.  The purpose of which was to "establish reasonable and consistent travel and entertainment expense standards for EDR employees."  The memo stated that "EDR will reimburse employees for all REASONABLE meals while on company time **only**." Kern often had dinner near his home, after his work for the day had concluded, and charged the dinner to EDR as a lunch.

On July 9, 2002, Kern received a communication from Kellyann Barberio ("Barberio") which explained errors made by Kern on his expense reports, specifically, duplicative submissions.  Kern does not dispute that he submitted duplicative submissions.  He maintains that these submissions were made in error.  The accounting department originally took the position that these duplicate

4

submissions were "simply oversights." On July 10, 2002,
Kern had a conversation with Mr. Barber ("Barber"), the
President of EDR, wherein he informed Kern that he was being
terminated because of the errors made on his expense
reports. On July 11, 2002, EDR sent Kern a termination
letter. After his termination EDR paid Kern for seven
holiday and vacation days.

Kern thereafter founded a company, Environmental Reports,
Inc. ("ERI"), in Florida. Kern incorporated the company to
pursue income producing endeavors in the environmental data
business. ERI's only employee is Kern and it maintains its
principal place of business at Kern's home.

On October 25, 2002, Kern, through ERI, entered into an
"Independent Contractor Agreement" with FirstSearch
Technology Corporation ("FirstSearch"). FirstSearch is a
direct competitor of EDR. The agreement provided that Kern
would act as a sales representative for FirstSearch and sell
environmental information services, historical reference
information, and radius, linear, corridor, area and NEPA
reports. The agreement between ERI and FirstSearch was for
no specific period of time and could be terminated by
FirstSearch at any time.

On November 25, 2002, EDR learned that Kern might have
entered into this agreement with FirstSearch and as a result

wrote a letter to Kern, reminding him that he had continuing contractual, legal and ethical obligations to EDR.  On that same day EDR also sent a letter to Edward "Tad" Minkler, President of FirstSearch, informing him of Kern's contract with EDR.

On January 13, 2003, FirstSearch sent a letter to Kern, which terminated the Independent Contractor Agreement.  The reasoning given in the letter was that FirstSearch "no longer wish[ed] to be bound to pay the monthly retainer or travel reimbursement."  After FirstSearch terminated its contractual relationship with Kern, Kern continued to attempt to broker FirstSearch reports.

After July 12, 2003, he began using the title "Director of Business Development for Environmental FirstSearch Network." Since that time Kern has contacted EDR customers in Florida and has been universally recognized as a former EDR managerial employee.

On December 19, 2002, Kern filed a charge of employment discrimination with the EEOC.  The charge claimed that Kern's employment with EDR was terminated because of his age, in violation of 29 U.S.C. § 621 _et_ _seq_.  Kern was forty years of age when he began working with EDR and had been employed by this company for approximately eight years before being terminated.  Kern argues that a younger

6

colleague, Allyson Dusault ("Dusault"), had problems with
her expense reports and was not fired.

**STANDARD**

Summary judgment is appropriately granted when the
evidentiary record shows that there are no genuine issues of
material fact and that the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56 (c). In
determining whether the record presents genuine issues for
trial, the court must view all inferences and ambiguities in
a light most favorable to the non-moving party. See Bryant
v. Maffacci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 112
S. Ct. 152 (1991). A plaintiff raises a genuine issue of
material fact if "the jury could reasonably find for the
plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
252 (1986). Rule 56 "provides that the mere existence of
some alleged factual dispute between the parties will not
defeat an otherwise properly supported motion for summary
judgment; the requirement is that there be no genuine issue
of material fact." Liberty Lobby, supra, at 247-48 (emphasis
original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only
> for the rights of persons asserting claims and
> defenses that are adequately based in fact to have
> those claims and defenses to demonstrate in the
> manner provided by the Rule, prior to trial, that
> the claims and defenses have no factual basis.

7

<u>Celotex v. Catrett</u>, 477 U.S. 317, 327 (1986). "One of the principal purposes of summary judgment rule is to isolate and dispose of factually unsupported claims . . . it should be interpreted in a way that allows it to accomplish this purpose." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-324(1986).

**DISCUSSION**

1.  <u>The Connecticut Wage Payment Statute</u>

EDR argues that Kern's claim under the Connecticut Wage Payment Statute "must be dismissed as a matter of law because [Kern] admits that he lived in Florida during his entire tenure with EDR and was never employed by EDR in Connecticut." Therefore, EDR asserts that the court lacks jurisdiction over Kern's claim.

Kern responds that "there is no dispute that the defendant operates its national network out of Southport, Connecticut . . . therefore [it] comes within the coverage of the Connecticut General Statutes."

In Connecticut, "individuals employed outside the state of Connecticut are subject to wage payment laws of the states in which they are employed and are not afforded the protection of the Connecticut [Wage Payment Statute]." <u>Kubas v. Hartford Financial Services Co.</u>, 27 Conn. L. Rptr. 565, 2000 WL 1170237 at *2 (Conn. Super. 2000) (unpublished *per*

8

*curiam).*  As it is undisputed that Kern lived and worked

outside the state of Connecticut during his entire tenure

with EDR, the court concludes that it lacks jurisdiction to

hear this claim.  Therefore, summary judgment is GRANTED.

    2.  Tortious Interference With Business Opportunity

    EDR next asserts that "the record establishes

unequivocally that EDR did not interfere with any of Kern's

contractual relationships and that his business relationship

with FirstSearch continued undeterred." Specifically EDR

claims that "Kern has failed to establish: (i) that EDR knew

Kern had a contractual relationship with FirstSearch; (ii)

that EDR intended to interfere with that relationship; (iii)

that any interference was tortious; or (iv) that any loss

was occasioned by EDR's intentional conduct."  Kern

responds that "a trier of fact could determine that the

termination of the business relationship which the

plaintiff had carved out with FirstSearch was the result of

the intrusion of the defendant."  Specifically, Kern

asserts that EDR tortiously interfered with his business

opportunities when Barber, the President of EDR, sent a

letter to FirstSearch after "hear[ing] speculation that

Kern may have become an agent of FirstSearch." The letter

informed Minkler of Kern's non-compete covenant with EDR

and stated that if they were to become aware of such a

9

relationship between FirstSearch and Kern then "EDR [would]
pursue any and all legal remedies available, including, but
not limited to pursuit of injunctive relief and recovery of
general, treble and punitive damages."

In Appleton v. Board of Education of the Town of
Stonington, 254 Conn. 205, 212-213 (2000), the Connecticut
Supreme Court established that the fundamental elements of
a tortious interference with business opportunity claim
are: [1] the existence of a business relationship; [2] the
alleged tortfeasor's knowledge of that relationship; [3]
intentional interference with the relationship; [4] that
the interference was tortious; and [5] that the plaintiff
suffers a consequential loss.

"Not every act that interferes with a business
relationship is actionable." Chem-Tek, Inc. v. General
Motors Corp., 816 F. Supp. 123, 130 (D. Conn. 1993). "Fair
and free competition is necessary to the economic life of a
community, and one may, by legitimate means, interfere with
a competitor's mere expectancy that his business relations
will continue." Harry A. Finman & Son, Inc. v. Connecticut
Truck & Trailer Serv. Co., 169 Conn. 407, 415 (1985). In
order to prevail on a tortious interference with a business
expectancy the plaintiff must prove "that the defendant's
conduct was in fact tortious." Blake v. Levy, 191 Conn.

257, 261 (1983). The plaintiff may make such a showing by
proving that the defendant engaged in "fraud,
misrepresentation, intimidation or molestation . . . or
that the defendant acted maliciously." <u>Blake v. Levy</u>, 191
Conn. 257, 261 (1983); <u>quoting</u> <u>Kecko Piping Co. v. Monroe</u>,
172 Conn. 197, 201-202 (1977).

The Second Circuit has recognized that "litigation or
the threat of litigation can give rise to a claim for
tortious interference with [business opportunity]."
<u>Universal City Studios, Inc. v. Nintendo Co. Ltd.</u>, 797 F.2d
70, 75 (2d Cir. 1986). Litigation or the threat of
litigation can give rise to such a claim if the litigation
is "wrongful." <u>Id.</u> at 75. "A lawsuit or the threat of a
lawsuit is wrongful "if the actor has no belief in the
merit of the litigation." <u>Id.</u>; <u>see</u> <u>also</u> RESTATEMENT (SECOND)
OF TORTS § 767, cmt. c. It is also wrongful if the actor
having some belief in the merit of the suit, "nevertheless
institutes or threatens to institute the litigation in bad
faith, intending only to harass the third parties and not
to bring his claim to definitive adjudication." <u>Universal
City Studios, Inc.</u>, 797 F.2d at 75; RESTATEMENT (SECOND) OF
TORTS § 767, cmt. c.

Here, the court concludes that Kern has failed to
raise a genuine issue of material fact that EDR acted in

11

bad faith by threatening litigation.  It is clear from the
record that EDR believed that there was merit in the
possible litigation.  EDR maintains that the non-
competition covenant is reasonable and enforceable.  EDR
has in fact filed a counterclaim on this issue.  If the
covenant is valid, then the litigation that EDR threatened
is meritorious.  Accordingly, Kern has failed to establish
as a matter of law that EDR's actions were tortious.
Therefore, summary judgment is GRANTED.

> 3.  <u>Unreasonable Non-Competition Agreement</u>

EDR argues that the 2000 agreement is valid and that
even if the 2000 agreement is unenforceable for lack of
consideration "the 1994 agreement would, therefore, not be
superseded and would still be fully enforceable."  EDR
further asserts that "whether or not the Court considers the
1994 or the 2000 agreement the operative agreement in this
case, they are both reasonable and fully-enforceable."

Kern responds that the 2000 agreement is the proper
agreement to evaluate.  Kern further states that the 2000
agreement is invalid because "the geographic area is
overbroad; the protection afforded the employer is unfair;
and the restraint on the employee's opportunity to pursue
his occupation is unwarranted."  Additionally, Kern argues
that he did not receive consideration for signing the 2000

agreement, therefore, "the [2000] agreement is invalid because it lacks adequate consideration."

In the first instance, the court concludes that the 2000 agreement is not invalid for want of consideration. "Consideration has been defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." Finlay v. Swirsky, 103 Conn. 624, 631 (1925). "An exchange of promises is sufficient consideration to support a contract." Osborne v. Locke Steel Chain Co., 153 Conn. 527, 531 (1966). However, "Connecticut recognizes that continued employment is adequate consideration to support non-compete covenants with at-will employees." Sartor v. Town of Manchester, 312, F. Supp. 2d 238, 244-245 (2004). Because there was no employment contract, and since neither party disputes that EDR could terminate Kern at any time, his continued employment is sufficient consideration to support the 2000 agreement.

With respect to the legality of the non-competition provision contained within the 2000 agreement, the court simply does not have sufficient information to render a decision. In Scott v. General Iron & Welding Co., 171 Conn. 132, 137 (1976), the court held that a restrictive covenant not to compete is valid and enforceable if the restraint is reasonable. In Robert S. Weiss & Assocs., Inc. v.

13

Wiederlight, 208 Conn. 525, 529 n. 2 (1988), the Connecticut
Supreme Court stated that in order to determine the
reasonableness of a restrictive covenant the court must
consider five factors: "(1) the length of time the
restriction operates; (2) the geographical area covered; (3)
the fairness of the protection accorded to the employer; (4)
the extent of the restraint on the employee's opportunity to
pursue his occupation; and (5) the extent of interference
with the public's interest." Robert S. Weiss & Assocs., Inc.
v. Wiederlight, 208 Conn. 525, 529 n. 2 (1988). "The five
prong test . . . is disjunctive, rather than conjunctive; a
finding of unreasonableness in any one of the criteria is
enough to render the covenant unenforceable." New Haven
Tobacco Co. Inc., v. Perrelli, 18 Conn. App. 531, 534
(1989). Whether a covenant not to compete "is reasonable or
unreasonable is a question of law for the court. Cf. Robert
S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525,
530, 546 A.2d 216 (1988) (reasonableness of covenant not to
compete); Scott v. General Iron & Welding Co., 171 Conn.
132, 137-38, 368 A.2d 111 (1976) (same)." Hare v. McClellan,
234 Conn. 581, 589 (1995).

i. Time

The 2000 agreement provides for a time restriction of
one year. Connecticut courts have found that a time

restriction of one year is reasonable. <u>Robert S. Weiss &</u>
<u>Associates, Inc. v. Wiederlight</u>, 208 Conn. 525, 530
(1988)(two year time restriction in non-compete covenant was
reasonable).  The length of time provided in the 2000
agreement is reasonable as a matter of law.

### ii. Geography

The 2000 agreement defines the "Non-Competition
Territory" as the United States. "The general rule is that
the application of a restrictive covenant will be confined
to a geographical area which is reasonable in view of the
particular situation . . . [a] restrictive covenant which
protects the employer in areas in which he does not do
business or is unlikely to do business is unreasonable with
respect to area." <u>Scott v. General Iron & Welding Co.</u>, 171
Conn. 132, 138 (1976).

Under the present state of the record the court is
unable to determine whether the geographical restriction is
reasonable.  Because the applicable test is disjunctive, a
finding that the covenant is unreasonable in geographic
reach could render the provision unenforceable.
Consequently, the court need not consider the other factors
at this juncture, and the motion for summary judgment is
therefore DENIED.

4. <u>Breach of Contract for Payment of Wages</u>

EDR next argues that Kern has not stated a claim for breach of contract for payment of wages. Specifically, EDR asserts that "a plain reading of the relevant provisions of the 2000 agreement fails to establish that Kern was entitled to any *payment* of vacation or sick leave at the end of his employment with EDR." Additionally, EDR contends that "Kern has utterly failed to establish that there was a 'pattern' or 'practice' at EDR that required EDR to pay out accrued, but unused vacation when an employee was terminated from the company."

Kern responds that "under Florida law an employee who has not been paid wages by his employer is entitled to bring an action for breach of contract to recover the employee's wages." Specifically, Kern contends that "factual disputes predominate over the amount of wages and benefits owed [to] the plaintiff, and thus summary judgment is not appropriate."

The court concludes that there are genuine issues of material fact concerning EDR's policy on paying terminated employees for vacation and sick days. Accordingly, the motion for summary judgment is DENIED.

16

5. <u>Unlawful Age Discrimination</u>

EDR next contends that summary judgment should be granted with regard to Kern's assertion that he was terminated based on age discrimination. EDR specifically contends that "Kern cannot establish a prima facie case for age discrimination. Moreover, even assuming Kern could establish a prima facie case for age discrimination, EDR has proffered a legitimate non-discriminatory reason for its action and Kern has not adduced any admissible evidence to suggest that this reason was a pretext for discrimination. Accordingly, Kern's age discrimination claim should be dismissed as a matter of law."

Kern responds that "because a reasonable fact finder could conclude that defendant's stated reason [for terminating Kern] was a pretext for unlawful discrimination, summary judgment should not be granted to the defendant on the plaintiff's age discrimination claim."

The ADEA provides that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's age." 29 U.S.C. § 621(a)(1). The United States Supreme Court has developed a three-step shifting burden test for Title VII discrimination cases. <u>McDonnell</u>

<u>Douglas Corp. v. Green</u>. 411 U.S. 792 (1973). This test also
applies to cases brought under the ADEA. <u>Pena v. Brattleboro
Retreat</u>, 635 F.2d 1027, 1032 (2d Cir. 1980). Under this
analysis, a plaintiff must first establish a prima facie
case of discrimination by a preponderance of the evidence.
<u>Pena v. Brattleboro Retreat</u>, 635 F.2d at 1032. If the
plaintiff establishes a prima facie case of discrimination
"[t]he burden then must shift to the employer to articulate
some legitimate, nondiscriminatory reason for the employee's
rejection." <u>Pena v. Brattleboro Retreat</u>, 635 F.2d at 1032.
If the employer does so, the plaintiff must prove by a
preponderance of the evidence that the defendant's
legitimate, non-discriminatory reason was not its true
reason for terminating the employee, but was a pretext for
discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>,
530 U.S. 133, 143 (2000). The United States Supreme Court
has modified the third step of the test to require the
plaintiff to show both that the defendants' articulated
reason is false and that the true reason is illegal
discrimination. <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509
U.S. 502 (1993).

           i. The Plaintiff's Prima Facie Case

     The plaintiff's first burden under <u>McDonnell Douglas
Corp. v. Green</u>, 411 U.S. 792 (1973), is to establish a prima

facie case of discrimination. The nature of the plaintiff's burden of proof at the prima facie stage is de minimis. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "Under McDonnell Douglas, a plaintiff establishes a prima facie case of [age] discrimination by showing that: (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job;[2] (iii) the plaintiff suffered an adverse employment action; (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

Kern can establish that at the relevant time he was a member of the class protected by the ADEA, which includes "individuals who are at least 40 years of age." 29 U.S.C. § 631 (a). Kern can also establish without dispute that he suffered an adverse employment action. His employment was terminated.

---

[2] This element is alternatively formulated as "job performance was satisfactory." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). The Second Circuit panel in Slattery has held that the variation in terminology does not alter plaintiff's burden under element two, and that plaintiff's burden is an objective one requiring "plaintiff [to] show only that 'he possesses the basic skills necessary for performance of [the] job,'" Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001); citing Owens v. New York City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991), that is, to "establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." Id. This objective interpretation of Slattery appears at odds with the subjective one in Thornley v. Penton Publ'g, Inc., 104 F.3d 26 (2d Cir. 1997), which requires a showing that, at the time of discharge, plaintiff was meeting the employer's legitimate and honestly held expectations. See Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997). Notably, the Slattery panel did not mention Thornley, but cited Owens, the same case that the Thornley panel thoroughly discussed and construed as directing a subjective approach. See Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 30 (2d Cir. 1997)

In the present case, the defendants argue that Kern has
failed to establish that he was qualified for the position
and that the adverse employment action gives rise to an
inference of discrimination. Because the court agrees with
EDR that as a matter of law, plaintiff cannot meets its
ultimate burden under the McDonnell Douglas burden shifting
analysis of proving pretext, specifically, that they
intentionally discriminated against plaintiff on the basis
of his age, it does not consider whether the plaintiff has
satisfied his de minimis burden to establish a prima facie
case.

ii. The Defendants' Non-Discriminatory Reason

To rebut the inference of discrimination established by
the plaintiff's prima facie case, the defendants must
*articulate* a legitimate, non-discriminatory reason for
discharging the plaintiff. Texas Department of Community
Affairs v. Burdine, 450 U.S. 248, 253 (1981). The defendant
must state a "clear and specific" reason for the
termination.  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.
1985).

Defendant has satisfied its burden to articulate a
legitimate, non-discriminatory rationale for Kern's
discharge.  EDR has stated that they discharged Kern because
he was involved with fraudulent activities with regard to

20

his expense reimbursement reports.  According to EDR Kern
submitted the same bill for reimbursement more than once, he
also submitted bills for reimbursement that EDR believed
were incurred for non-business related matters, and he
submitted receipts for dinners he had at the conclusion of
his work day within a few miles from his home.

In Whitley v. Runyon, 104 F.3d 352, 1996 WL 626348 (2d
Cir.) (unpublished per curiam) the Court concluded that the
"defendant's legitimate non-discriminatory reasons were that
[the plaintiff] could not account for shortfalls in her
account and that [the plaintiff] made false entries in her
financial records." See also, Kudatsky v. Galbreath Co.,
1997 WL 598586 at *7 (S.D.N.Y.) (the Court concluded that
the defendants articulated a legitimate non-discriminatory
reason for plaintiff's termination by alleging that
plaintiff submitted reimbursement requests for her phone
bill that included her personal calls.) The court agrees
with the reasoning of Whitley. Accordingly, the court
concludes that the defendants have sufficiently rebutted the
inference of discrimination by articulating a legitimate
non-discriminatory reason for Kern's termination.

iii. The Plaintiff's Evidence of Pretext

Finally, the plaintiff must show that the reason given
by the defendants was false and that illegal discrimination

21

was the real reason. St. Mary's Honor Center v. Hicks, 509

U.S. 502, 507-508 (1993). "The plaintiff may satisfy this

burden by persuading the court that . . . the employer's

proffered reason is unworthy of credence." McDaniel v.

Temple Independent School District, 770 F.2d 1340 (5th Cir.

1985).

> The factfinder's disbelief of the reasons put
> forward by the defendant (particularly if disbelief
> is accompanied by a suspicion of mendacity) may,
> together with the elements of the prima facie case,
> suffice to show intentional discrimination. Thus,
> rejection of the defendant's proffered reasons will
> permit the trier of fact to infer the ultimate fact
> of intentional discrimination. Thus, rejection of
> the defendant's proffered reasons, will permit [but
> does not compel] the trier of fact to infer the
> ultimate fact of intentional discrimination . . .
> [and] no additional proof of discrimination is
> required.

St. Mary's, 509 U.S. at 511.

Even if a jury might conclude that EDR's articulated

rationale of fraudulent reimbursements was false, Kern "has

not demonstrated that the asserted pretextual reasons were

intended to mask age discrimination." Schnabel v. Abramson,

232 F.3d 83, 88 (2000). The Supreme Court's decision in

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133,

143 (2000), mandates a case-by-case evaluation of the entire

record "to determine whether the plaintiff could satisfy his

'ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the

plaintiff.'" <u>Schnabel</u>, 232 F.3d at 90-9. "Even where plaintiff's evidence establishes a de minimis prima facie case and demonstrates some pretext, an employer may still be entitled to summary judgment if such evidence by itself or coupled with any additional evidence offered by the plaintiff could not reasonably support an inference of age discriminatory intent." <u>Choate v. Transport Logistics Corp.</u>, 234 F. Supp. 2d 125, 133 (D. Conn. 2000); <u>See</u> <u>Schnabel</u>, 232 F.3d at 90-91; <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 93-94 (2d Cir. 2001). The plaintiff must show that a discriminatory reason actually motivated the employer, or that employer's proffered reason lacks credibility. <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 256-57 (1981).

Kern asserts that the fraudulent expense reimbursements were a pretext for age discrimination. However, Kern does not support this allegation with any evidence that the real reason for his discharge was his age. He asserts that

> in light of [his] work record, the commendations
> he received, the initial view taken of the errors
> in his phone bill submissions by the defendant's
> department in charge of overseeing expense
> reimbursement [initially the accounting department
> referred to these errors as "simply oversights"],
> a factfinder could find that it was implausible
> that the defendant fired the plaintiff for the
> reasons it originally asserted, the mistakes made
> by the plaintiff in submitting his phone bills for
> reimbursement.

He argues that there was as system-wide lack of adherence to its expense reporting procedures, that he had approval for taking lunches at the end of the day, that EDR failed to document its reasons for firing Kern, that EDR advanced for the first time the claim that the plaintiff had "engaged in wide-ranging and repeated acts of expense reimbursement fraud" only after the plaintiff filed a complaint with the EEOC, and in defendant's after-the-fact efforts to bolster its reason for terminating the plaintiff.

However, Kern does not assert at any point that age motivated EDR to terminate him.  Kern's only argument supporting an inference of discriminatory intent is that a younger colleague, Dusault, who also had problems with her expense reports, was not fired.  However, all of the representations about Dusault are imprecise and vague.  In the plaintiff's memorandum in opposition to the defendant's motion for summary judgment, Dusault is mentioned in a footnote that she was having problems with her expense reports.  In his deposition Kern stated that Dusault had told him that she had submitted duplicate phone bills "all the time." However, Kern's only personal knowledge of Dusault's expense reports is that she was complying with the policy.  In Barber's declaration he states that he was

24

unaware of any other employee, including Allyson
Dusault, engaging in conduct similar to that in
which Mr. Kern engaged . . . [he] had never seen
this type of misuse of EDR's reimbursement
procedures [and] would terminate[] any employee of
EDR who engaged in this type of conduct
irrespective of his or her age, gender, national
origin, tenure with the company, or any other
characteristic.

Barber asserts that he "never considered Mr. Kern's age when

making this decision . . . [he] did not know how old Mr.

Kern was at the time [he] made the decision." Thus, the

strongest inference that EDR terminated Kern based on age

discrimination that can be drawn in Kern's favor from the

undisputed facts is that another employee may have submitted

a phone bill on more than one occasion.

In contrast to Kern's weak evidence of pretext, any

reasonable inference of age discrimination is decisively

undercut by the "abundant and uncontroverted independent

evidence that no discrimination had occurred," Reeves, 530

U.S. at 148, namely that Kern had submitted duplicate

reimbursements.  Accordingly, as no reasonable jury could

find plaintiff's evidence sufficient to support a verdict in

his favor, summary judgment is GRANTED.

6. Unlawful Retaliation

EDR next contends that plaintiff's claim for

retaliation fails as a matter of law.  Specifically, EDR

asserts that Kern cannot establish a prima facie case

25

because "the record established that there is no causal connection between Kern's protected activity and the alleged adverse employment action." Additionally, EDR asserts that "each of EDR's counterclaims are legitimate and were filed for a non-retaliatory reason – to seek legal relief for Kern's misconduct."

Kern responds that "it cannot seriously be disputed that the plaintiff satisfies the necessary elements for proving a prima facie case of unlawful retaliation." In addition Kern argues that EDR's assertions contained in the counterclaim are "frivolous." As a result Kern asserts that "the proof establishing the plaintiff's prima facie case, together with the evidence regarding the baseless allegations advanced by the defendant in support of its causes of action is sufficient to allow a trier of fact to find for the plaintiff on his retaliation claim."

The antiretaliation provision of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634, prohibits an employer from discriminating "against any of his employees[3] or applicants for employment . . . [who] ha[ve] opposed any practice made unlawful by th[e] [ADEA]." 29 U.S.C. § 623(d).

A claim for retaliation under the ADEA is analyzed under the <u>McDonnell Douglas</u> three-part burden shifting

[3] Employee is defines as "an individual employed by any employer." 29 U.S.C. § 630(f)

26

analysis. <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248
F.3d 87, 94 (2d Cir. 2001); <u>Reed v. A.W. Lawrence & Co.</u>, 95
F.3d 1170 (2d Cir. 1996).  The plaintiff must first
establish a prima facie case. <u>Slattery v. Swiss Reinsurance
America Corp.</u>, 248 F.3d 87, 94 (2d Cir. 2001). Once the
plaintiff establishes a prima facie case the burden of
production then shifts to the defendant, who must articulate
a legitimate, non-retaliatory reason for its actions.
<u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 94
(2d Cir. 2001). Once the defendant has articulated a non-
retaliatory reason for its action, the plaintiff must prove
that the defendant's legitimate non-retaliatory reason was
not its true reason, but rather a pretext for retaliation.
<u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87,
94-95 (2d Cir. 2001).

i. The Plaintiff's Prima Facie Case

To establish a prima facie case for retaliation under
the ADEA, a plaintiff must establish that: (i) he was
engaged in protected activity by opposing a practice made
unlawful by the ADEA; (ii) the employer was aware of the
activity; (iii) the employee suffered an adverse employment
action; and (iv) there was a causal connection between the
protected activity and the adverse employment action.
<u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 94

(2d Cir. 2001); <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170
(2d Cir. 1996).

EDR does not dispute that Kern can establish the first
three required elements of the prima facie case for
retaliation. In filing a complaint of age discrimination
with the EEOC, Kern was engaged in an activity protected by
the ADEA. The defendant was aware of Kern's actions and the
filing of the counterclaims constitute an adverse action.
However, EDR does argue that "the record establishes that
there is no causal connection between Kern's protected
activity and the alleged adverse employment action."

The Second Circuit has held that evidence of a causal
connection between a protected activity and an adverse
employment action may be established indirectly, by showing
that the adverse action or discriminatory treatment occurred
shortly following the protected activity. <u>See</u> <u>Davis v. State
Univ. of New York</u>, 802 F.2d 638, 642 (2d Cir. 1986); <u>Quinn
v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir.
1998). Applying this reasoning, a causal connection can be
established, where, as here, the claims could have been
asserted earlier, upon EDR discovering the fraud, but were
instead asserted only after the plaintiff had initiated the
action with the EEOC. <u>See</u> <u>Kreinik v. Showbran Photo Inc.</u>,
2003 WL 22339268 at *8 (S.D.N.Y.) (finding a causal

28

connection where the defendant asserted counterclaims only after the plaintiff had initiated the action seeking to vindicate his federal rights); see also Yankelevitz v. Cornell Univ., 1996 WL 447749 at *6 (S.D.N.Y.) (noting that the fact that asserted counterclaims might have been compulsory do not per se negate the retaliatory animus).

It is undisputed that EDR did not file the counterclaims until after Kern filed his claim of age discrimination with the EEOC. Therefore, Kern has established that a causal connection could exist between the assertion of rights and the adverse action, satisfying the fourth element of the prima facie case. Kern has established a prima facie case, thus, shifting the burden to EDR to point to evidence supporting a legitimate non-retaliatory reason for the adverse employment action.

ii. The Defendant's Non-Retaliatory Reason

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), once the plaintiff demonstrates a prima facie case, the defendant is obligated to produce evidence which if taken as true would permit the conclusion that there was a non-retaliatory reason for the adverse action. See LaFond v. General Physics Services Corp., 50 F.3d 165, 174 (2d Cir. 1995). EDR has introduced evidence of a legitimate, non-retaliatory reason for its decision to file counterclaims

29

against Kern. EDR asserts that their "counterclaims are legitimate and were filed for a non-retaliatory reason – to seek legal relief for Kern's misconduct."

Although, EDR has not supported this statement explicitly in their brief, it is clear from the evidence that Kern has engaged in some misconduct with regards to expense reimbursements and arguably with the 2000 non-compete covenant. Therefore, EDR has satisfied its burden of articulating a non-retaliatory reason for its counterclaim; thus, the burden shifts to Kern to demonstrate pretext.

### iii. The Plaintiff's Evidence of Pretext

"Since [EDR] articulated a legitimate, non-retaliatory reason for [filing counterclaims against Kern, EDR's] burden at trial under McDonnell-Douglas would be to prove by a preponderance of the evidence that the reason articulated was a pretext for [the] retaliatory [action]." LaFond v. General Physics Services Corp., 50 F.3d 165, 174 (2d Cir. 1995). "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more . . ." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir. 1994) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Thus, unless

the employer has come forward with evidence of a dispositive non-retaliatory reason "as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a [non-retaliatory] reason reflect a question of fact to be resolved by the factfinder at trial." LaFond v. Gerneal Physics Services Corp., 50 F.3d 165, 174-175 (1995) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)).

Kern argues that "the causes of action were instituted to punish the plaintiff for suing the defendant for age discrimination." Kern states that EDR's legitimate non-retaliatory reason, to seek legal relief, was a pretext with regard to the fraud claim because "the mistaken submissions of two phone bills for reimbursement, one bill on two occasions, and the other on three occasions, both bills totaling $62.17 just does not support a claim of fraud." Kern further asserts that "the defendant's accounting department reaction to the errors, labeling them as oversights, further demonstrates defendant's pretext." Kern responds to the alleged fraudulent requests for meal reimbursements, by stating that he did nothing "that could be considered fraudulent; he submitted accurate records of

31

the meals, the reimbursement for which he received the approval of his supervisor and the defendant's accounting department." He further states that "the spurious nature of the fraud claim carries over to the defendant's allegations regarding conversion, tortious interference with business relations and tortious interference with contract."

Kern states in a conclusory fashion that all the counterclaims were to punish him and EDR states in a conclusory fashion that the counterclaims were to seek legal relief. The court cannot conclude as a matter of law that the counterclaims were not to punish Kern. Therefore, because the court concludes that Kern has established a prima facie case of retaliation at the summary judgment stage and because a rational factfinder could conclude that the counterclaims were instituted to punish Kern, rather than to seek legal relief, summary judgment is DENIED.

### CONCLUSION

For the foregoing reasons, EDR's motion for summary judgment (document no. 19) is DENIED in part and GRANTED in part.

It is so ordered, this 13th day of August, 2004, at Hartford Connecticut.

_____
Alfred V. Covello
United States District Judge

32