UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHARLES W. KERN,

      Plaintiff,

v.                                     CIVIL CASE NO. 303-CV-0233-AVC

ENVIRONMENTAL DATA
RESOURCES, INC.                          October 1, 2004

      Defendant.

_____/

## JOINT TRIAL MEMORANDUM

      Plaintiff, Charles W. Kern ("Kern" or "Plaintiff"), and Defendant, Environmental Data Resources, Incorporated ("EDR", "Defendant" or "Defendant/Counterclaimant"), hereby submit their Joint Trial Memorandum, in accordance with this Court's August 18, 2004 Pretrial Order (Dkt. No. 40).

1.      **TRIAL COUNSEL**

      A.      ***FOR THE PLAINTIFF:***

               Thomas W. Bucci, Esquire
               Fed. Bar # ct 07805
               WILLINGER, WILLINGER & BUCCI, P.C.
               855 Main Street
               Bridgeport, Connecticut 06604
               Telephone:    203.366.3939
               Facsimile:    203.337.4588
               Email: thomasbucci@earthlink.net

B.     ***FOR THE DEFENDANT/COUNTERCLAIMANT:***

Mark E. Zelek, Esquire
Fed. Bar # ct 25202
Telephone:     305.415.3303
Email: mzelek@morganlewis.com
Brian D. Buckstein, Esquire
Fed. Bar # ct 24543
Telephone:     305.415.3380
Email: bbuckstein@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131-2339
Facsimile:     305.415.3001

Sarah W. Poston, Esquire
Fed. Bar # ct 19702
Telephone:     203.333.9441
Email: sposton@znclaw.com
Marcy Tench Stovall, Esquire
Fed. Bar # ct 14238
Telephone:     203.333.9441
Email:  mstovall@znclaw.com
ZELDES, NEEDLE & COOPER, P.C.
1000 Lafayette Blvd.
P.O. Box 1740
Bridgeport, CT  06601-1740
Facsimile:     203.333.1949

2.     **JURISDICTION**

Plaintiff has invoked the jurisdiction of the court pursuant to the provisions of the Age

Discrimination In Employment Act, Title 29 U.S.C. § 621 *et seq*. ("ADEA").  Jurisdiction is

further invoked pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1343(a)(3), 1343(a)(4).  The Court

has jurisdiction over the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.  This Court has

jurisdiction over Defendant/Counterclaimant's claims pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1367.

**3.**    **JURY/NON-JURY**

Both parties request a jury trial on all claims so triable.

**4.**    **LENGTH OF TRIAL**

The parties anticipate that the trial of this matter will last five (5) days.

**5.**    **NATURE OF CASE**

A.    ***Plaintiff Statement of Nature of the Case***

*1.*    *Unlawful Retaliation*

The plaintiff asserts that the defendant filed its counterclaims in this action in retaliation against the plaintiff for the plaintiff's filing of a charge of age discrimination against the defendant with the United States Equal Employment Opportunity Commission ("EEOC").  The plaintiff had been employed by the defendant from July 25, 1994 to July 11, 2002, when the defendant terminated his employment.  The defendant purportedly terminated the plaintiff's employment for the stated reason that he had made errors on his expense reports.  After he was terminated, the plaintiff on, December 19, 2002, filed a charge of unlawful age discrimination against the defendant with the EEOC.  In response to this charge, the defendant, for the very first time, some five months after it terminated the plaintiff's employment, claimed that the plaintiff "engaged in wide-ranging and repeated acts of expense reimbursement fraud."  When the

plaintiff pursued his claim of unlawful age discrimination by bringing the present action in the United States District Court for the District of Connecticut, the defendant filed various counterclaims against the plaintiff charging him with "wide-ranging and repeated acts of expense reimbursement fraud".

It is undisputed that the defendant had not pursued any claim against the plaintiff in which it charged the plaintiff with so-called widespread fraudulent behavior until the plaintiff filed his claim with the EEOC alleging age discrimination. In fact, the defendant had not even threatened to take such action at any time prior to the plaintiff instituting proceedings against the defendant with the EEOC. In correspondence to the plaintiff regarding issues surrounding the plaintiff's termination, the defendant's entire focus was on duplicate telephone bills submitted by the plaintiff, not the supposed widespread fraud it claims to have uncovered prior to firing the plaintiff. In a letter to the plaintiff dated August 9, 2002, well after the defendant allegedly had discovered the widespread fraud, the defendant only mentioned that "EDR will counterclaim for all amounts owed to EDR *as a result of expense reports you submitted in duplicate*". It never asserted any claim that the plaintiff had committed widespread fraud, until the plaintiff commenced age discrimination proceedings against the defendant. It was only after the plaintiff filed his charges with the EEOC and after the plaintiff brought this lawsuit that the defendant asserted its causes of action by way of counterclaim against the plaintiff. Unquestionably these claims of the defendant could have been filed once the defendant allegedly uncovered the perceived fraudulent conduct, well before proceedings before the EEOC had been initiated by the

plaintiff.  As a remedy, the plaintiff seeks consequential damages, punitive damages, attorney fees and costs.

### 2.     *Breach of Contract for Payment of Wages*

The plaintiff asserts a claim for breach of contract under Florida law, which permits an employee who has not been paid wages by his employer to bring an action for breach of contract. The plaintiff claims "the defendant failed to pay the plaintiff the compensation to which the plaintiff was legally entitled pursuant to the terms and conditions of his employment with the defendant".  The plaintiff asserts that when he was fired, the defendant did not pay him certain commissions he was due, as well as vacation and sick pay that he had accrued and to which he was entitled on employment separation.  When the plaintiff requested payment from the defendant, Barber first made payment conditional on the plaintiff signing a separation agreement in which he would release the defendant from all claims.  It was only after the plaintiff initiated the present action did the defendant make any attempt to pay the plaintiff the monies owed to him.  The monies were sent to the plaintiff by check on February 24, 2003, over seven months after the plaintiff was fired.  The amount sent to the plaintiff was $902.31, much less than that owed the plaintiff.  The defendant compensated the plaintiff for "seven accrued and unused vacation/holidays", because "[w]hen Mr. Kern was discharged on July 11, 2002, he had accrued 58% of his vacation/holiday time, or 11 days, and had used four days.  However, the plaintiff was entitled to pay for his entire vacation and floating holidays, nineteen days.  Pursuant to the

policy of the defendant, vacation and floating holidays accrued in full on the first day of January of each year.  Therefore, the attempt by the defendant to prorate the vacation/holiday time amounted to a breach of its contract with the plaintiff to accrue holiday and vacation time in full at the start of the year, and to pay the accrued and unused vacation and holiday time to the plaintiff upon termination.  Further, the plaintiff claims that at the time of his termination, the defendant owed him commissions to which he was entitled.  As a remedy, the plaintiff seeks monetary damages.

### 3.    *Unreasonable Non – Compete Covenant*

The plaintiff seeks a ruling from the Court that the Non-Compete Agreement he was made to sign in 2000 is unenforceable.  The 2000 agreement, which by its express terms supersedes any previous agreement, does not permit the plaintiff to act as a consultant or in any other capacity in the environmental data field throughout the United States and for a period of one year.  It is the plaintiff's contention that the agreement fails to satisfy the essential elements established by the Courts in the State of Connecticut to determine the validity of non-compete agreements.  "The five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are (1) the length of time the restriction operates; (2) the geographic area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests."  *Robert S. Weiss & Assoc. v.*

*Wiederlight,* 208 Conn. 525, 529, 546 A.2d 216 (1988). The 2000 agreement most certainly fails

the reasonableness factors. The non-compete agreement contains a one-year non-compete

provision and a one-year non-solicitation provision. Thus, the agreements contain both an anti-

sales covenant and an anti-solicitation covenant. While employed by the defendant, the plaintiff

worked first as the defendant's Southeastern Regional Manager, and, in 2000 was appointed the

defendant's Regional Manager for Florida. In view of the geographic area assigned the plaintiff

when he worked for the defendant, the national scope of the restrictive covenant is unreasonable.

To bar the plaintiff from all employment opportunities in the environmental data field throughout

the United States is unfair, especially since the plaintiff's advantage in competing with the

defendant would be limited to the state of Florida. "The covenant's language is so overly broad

it provides more protection than plaintiff needs." *Cost Management Incentives, Inc. v. Yollanda*

*London-Osborne et al.,* CV020463081, Superior Court Of Connecticut, Judicial District Of New

Haven, at New Haven, 2002 Conn. Super. LEXIS 3967. For the very same reasons, the plaintiff

asserts that in the event the court finds that the 1994 Non-Compete Agreement controls, it is

likewise invalid for being overbroad especially in its geographic reach.

       B.        ***Defendant/Counterclaimant's Statement of the Nature of the Case***

      Plaintiff filed his Complaint against EDR on February 5, 2003. *See* Dkt. No. 1. On

March 31, 2003, EDR timely responded to Plaintiff's Complaint by filing an Answer,

Affirmative Defenses, and Counterclaims against Plaintiff. *See* Dkt. No. 9. Then, on April 28,

2003, Plaintiff sought leave to amend his Complaint to add claims for: (i) unpaid wages under

Florida law; (ii) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); and (iii) retaliation in violation of the ADEA.  The Court granted Plaintiff's request to amend his Complaint on October 17, 2003.  (Docket Nos. 16).

In his Amended Complaint, Plaintiff asserted six cause of action against EDR: (i) Violations of Connecticut's Wage Payment Statute, General Statutes § 31-71(c)(k) based on EDR's alleged failure to pay vacation and sick pay (Count I) ; (ii) tortious interference with business opportunities (Count II); (iii) unreasonable non-compete covenant (Count III); (iv) breach of contract for payment of wages under Florida law (Count IV); (v) unlawful age discrimination in violation of the ADEA (Count V); and (vi) unlawful retaliation in violation of the ADEA (Count VI).

EDR filed six counterclaims against Plaintiff arising from his abuse of EDR's expense reimbursement policy (which resulted in his employment being terminated – a decision this Court concluded was legitimate and non-discriminatory) and his post-employment efforts to solicit EDR clients in violation of his non-competition agreement.  Specifically, EDR asserted the following counterclaims: (i) Unjust Enrichment (Count I); (ii) Fraud (Count II); (iii) Conversion (Count III); (iv) Breach of Contract (Count IV); (v) Tortious Interference with Business Relationships and Expectations (Count V); and (vi) Tortious Interference with Contract (Count VI).

On December 1, 2003, EDR filed a motion for summary judgment seeking to dismiss Plaintiff's Amended Complaint in its entirety and to obtain a judgment as to Plaintiff's liability

on EDR's counterclaims (Dkt. No. 19).  On August 13, 2004, after extensive briefing, this Court

dismissed Counts I, II, and V of Plaintiff's Complaint and denied EDR's motion for summary

judgment on its Counterclaims.  Accordingly, the claims that remain for trial are: (i) Plaintiff's

breach of contract claim under Florida law; (ii) Plaintiff's claim that EDR's restrictive covenant

is unreasonable in scope; (iii) Plaintiff's claim that EDR retaliated against Plaintiff because he

filed a Charge with the EEOC; and (iv) all six of EDR's counterclaims.

### 1. *Plaintiff's **Retaliation Claim under the ADEA***

Plaintiff claims that EDR filed its counterclaims in this action in retaliation for his filing a

Charge of age discrimination against EDR with the EEOC on December 6, 2002.  Plaintiff's

claim is baseless.  The undisputed facts establish that prior to the termination of his employment

(*and before he filed a Charge with the EEOC*), EDR management addressed the fact that

Plaintiff had submitted improper and inaccurate expense reimbursements.  Indeed, on July 11,

2002, Plaintiff's employment was terminated because of his submission of duplicative and

improper expense reports.  At the time of his termination, and while EDR and Plaintiff were

trying to negotiate a separation agreement, EDR identified the factual predicates to

Counterclaims I, II and III.  Indeed, Plaintiff was sent a letter on August 9, 2002, wherein EDR

notified Plaintiff it had valid claims against Plaintiff and would assert them.  Similarly, on

November 25, 2002, *one month before Kern filed his Charge*, EDR sent Kern a letter apprising

him of its concern that he was acting in violation of his non-compete agreements, and thus,

identified the factual predicates to Counterclaims IV, V, and VI.

On December 6, 2002, *after* Plaintiff was apprised of many of the facts giving rise to EDR's Counterclaims, Plaintiff *then* filed a Charge with the EEOC. As established by the uncontroverted sequence of events: (i) Plaintiff knew and was aware of the substance of EDR's counterclaims *before* he filed his EEOC charge; (ii) the counterclaims were filed almost four months after he filed his Charge with the EEOC; and (iii) the counterclaims were filed *before* Plaintiff filed a discrimination claim in federal court against EDR. Therefore, there is no causal connection between Plaintiff's protected activity (filing a Charge) and the alleged adverse employment action (the filing of counterclaims).

Furthermore, Plaintiff has failed to identify *any* damages as a result of the alleged adverse action and his claim must be dismissed for this reason alone

Finally, the record is undisputed that EDR had legitimate non-retaliatory reasons to file its counterclaims against Plaintiff, as recognized by the Court in its August 13 Order. Plaintiff admittedly engaged in conduct violative of his restrictive covenant and knowingly and willfully abused EDR's expense reimbursement policy. Plaintiff cannot point to any evidence that these reasons are a pretext and that the real reason for EDR's actions was unlawful retaliatory animus.

> **2.** *Plaintiff's Breach of Contract Claim for Unpaid Vacation and Sick Pay*

Plaintiff claims that EDR owes him unpaid wages for nineteen (19) accrued but unused vacation and sick days ($2,449.13) that should have been paid to him after he was terminated. Plaintiff claims that EDR had a policy of: (i) accruing *all* vacation and sick days on the *first* day

of each year, and (ii) paying all such unused vacation and sick pay to terminated employees.

Plaintiff's claim is untrue.  EDR had no policy of providing employees with *full* accrual of

vacation and sick leave on the first day of each year or a policy of paying out such benefits.

Moreover, the undisputed evidence establishes that, without having any obligation to do so, EDR

paid Plaintiff for vacation and sick days that he had accrued but did not use after his employment

was terminated (Plaintiff had accrued 11 and used 4 days = 7 days or $902.31, which he was

paid).  To the extent Plaintiff is permitted to claim that he is owed some unidentified

"commissions", despite the fact that throughout the litigation he has focused solely on his

allegedly unpaid vacation and sick pay, Plaintiff has been paid all earned commissions.

> **3.**     *Plaintiff's Claim that EDR's Non Compete Covenant is Unreasonable*

Plaintiff claims that the covenant not to compete that he agreed to as part of the

employment agreement he entered into with EDR, is unreasonable.  EDR's non-compete

agreements are valid and enforceable.  Kern acknowledged receipt of ten dollars in consideration

for the 2000 agreement, in addition to the fact his new employment relationship was conditioned

on its acceptance.  It is EDR's position that even assuming the 2000 agreement was

unenforceable for lack of consideration, the 1994 agreement would, therefore, not be superseded

and would still be fully enforceable.  In any event, both the 1994 and the 2000 agreements were

reasonable and fully-enforceable.  The 1994 agreement had a two year restrictive covenant and

was limited to very specific industries:  those that engage in "collection manipulation and

distribution of government information about hazard/Toxic sites."  The 2000 agreement had a

shorter time restriction -- one year -- and applied to a slightly larger, but still finite group of

industries: those engaging in  "historical, governmental, geographical, environmental,

telecommunications data and information, and informational products or services relating to real

estate and/or the telecommunications industry."  Kern's contention that the agreements should be

voided and enjoined as unreasonable is unsupported.

Moreover, to the extent the Court determines that any portion of either the 1994 or 2000

agreements are overly broad, the Court has the ability to "blue pencil" or modify the agreement

to make the agreement enforceable.

### 4.     EDR's Counterlaims

EDR's counterclaims are premised on two types of unlawful conduct by Plaintiff.  First,

Plaintiff's expense reimbursement submissions that were intentionally misleading, submitted in

duplicate, and submitted for *personal* not legitimate business reasons.  Second, Plaintiff

knowingly and willfully violated his restrictive covenant by working with an admitted direct

competitor and attempting to solicit known EDR customers with the benefit of trade secret

information he learned while employed by EDR.

### a)     Unjust Enrichment/Fraud/Conversion (Counts I, II, and III)

These claims all arise from the same set of facts.  During Plaintiff's employment with

EDR, he knowingly submitted the same expense reimbursement bills for reimbursement more

than once and knowingly submitted expense reimbursement bills for personal, not business expenses. Such double and improper expense submissions were untrue, known by Plaintiff to be untrue, and resulted in harm to EDR by providing Plaintiff with monies he was not entitled. Plaintiff received a cash benefit from EDR that was unjustified. EDR is seeking compensatory and punitive damages arising from Plaintiff's tortious conduct.

b)      *Breach of Contract/Tortious Interference with Contract and Business Opportunities (Counts IV, V, and VI)*

EDR's breach of contract claim is based on Plaintiff's violation of his non-compete agreements he entered with EDR. On July 15, 1994, at the inception of his employment, Plaintiff signed a Non-Compete and Confidentiality Agreement ("1994 Agreement"). The 1994 Agreement provided, *inter alia*: "Employee hereby agrees that he or she will not for a period of two (2) years from the date of Employee's resignation or termination from the Company . . . be an agent of . . . any proprietorship, firm, corporation, partnership, joint venture or other entity *engaged in a competing business that engages in the collection manipulation and distribution of government information about hazard/Toxic sites*, (the "Company Business"), *or solicit* (by in-person visits, marketing, promotion, mail or telephone solicitation and/or advertising) *any of the Company Business in the United States* (the "Non-Competition Territory")." (emphasis added).

In May 2000, EDR engaged in a business reorganization. Plaintiff was offered employment selling only EDR products and on or about May 15, 2000, Plaintiff signed an employment agreement with covenant not to compete memorializing his new employment

relationship with EDR ("2000 Agreement").  The 2000 Agreement provided, *inter alia*:

"Employee hereby agrees that for a period of one (1) year from the date of Employee's

resignation or termination from the Company, he or she shall not: (a) alone or with others,

directly or indirectly, . . .  be an agent of, . . .any proprietorship, firm, corporation, partnership,

joint venture or other entity that: (i) *engaged in the collection, development, packaging, and sale*

*or licensing of historical, governmental, geographical, environmental, telecommunications data*

*and information, and informational products or services relating to real estate and/or*

*telecommunications industry* (the "Company Business"); or (ii) *solicit* (by in-person visits,

marketing, promotion, mail or telephone solicitation and/or advertising) *any of the Company*

*Business in the United States* (the "Non-Competition Territory")." (emphasis added)

Both the 1994 and the 2000 Agreements were reasonable in scope and temporal

limitation.  On or about July 11, 2002, Plaintiff was terminated from his employment with

Defendant because of his submission of duplicative and improper expense reports.  Shortly after

Plaintiff's termination, Plaintiff incorporated a company in Florida called Environmental

Reports, Inc. ("ERI") and began to work as an agent for a direct competitor: Environmental First

Research ("First Search").  There is no dispute that First Search engages in the same type of

business and is a competitor of EDR.  There is also no dispute that, while working for First

Search, Plaintiff contacted EDR's customers and attempted to solicit their business in an effort to

harm EDR.  Kern breached his non-compete agreements with EDR when he engaged in the types

of business prohibited by the non-competition agreements and solicited EDR's customers.

EDR's tortious interference with business relationships is premised on the fact that Plaintiff intentionally, willfully and maliciously made efforts to interfere with EDR's business relationships and contracts with its customers, while having knowledge of the existence of such relationships and contracts.  After leaving EDR, Plaintiff contacted entities with whom EDR had contracts and business relationships and used confidential and trade secret information that he had obtained while employed with EDR to unfairly compete with and cause actual losses to EDR.  EDR seeks compensatory and punitive damages for Plaintiff's tortious conduct.

**6.    FURTHER PROCEEDINGS**

Currently pending before the Court is Defendant's Motion for Partial Reconsideration of the Court's denial of EDR's Motion for Summary Judgment as to Plaintiff's claims for breach of contract (Count IV) and retaliation (Count VI).  *See* Dkt. No. 43.

**7.    TRIAL BY MAGISTRATE JUDGE**

The parties do not agree to have this case tried by a Magistrate Judge.

to be replaced

8.    **LIST OF WITNESSES**

   *A.*     ***Plaintiff's Witnesses:***

| PLAINTIFF'S WITNESS LIST | | |
| --- | --- | --- |
| **Name & Address** | **Time to Testify** | **Anticipated Testimony** |
| Charles W. Kern<br>3540 NW 71st Street<br>Coconut Creek, Florida 33073<br>954-422-9925 | 4 hours - direct testimony. | Charles Kern will testify concerning the elements of his retaliation claim against the defendant and the defendant's failure to pay him his accrued vacation and holiday time when it terminated his employment. |
| Rob Barber<br>address and telephone number presently unknown | 4 hours - direct testimony. | Rob Barber will testify as an adverse witness concerning the counterclaims the defendant filed against the plaintiff, as well as the defendant's failure to pay the plaintiff his accrued vacation and holiday time when the defendant terminated the plaintiff's employment. |
| Kellyann Barbiero<br>address and telephone number presently unknown | 2 hours - direct testimony. | Ms. Barberio will testify concerning the claim that the plaintiff had engaged in wide-ranging and repeated acts of expense reimbursement fraud. Ms. Barbiero will also be questioned concerning the approval process employed by the defendant in connection with the reimbursement of the plaintiff's expenses. |

| | | |
|---|---|---|
| Joe Burstiner<br>address and telephone number<br>presently unknown | 2 hours direct testimony. | Mr. Burstiner will testify concerning his approval of the expense reports submitted by the plaintiff for reimbursement. |
| Ally Dusault<br>404-251-1418<br>3125 El Dora Lane<br>Missoula, Montana 59803 | 1 hour direct testimony. | Ms. Dusault will testify about EDR, EDR's expense reimbursement policy, and her expense reimbursement submissions |

B.    ***Defendant's Witnesses:***

| DEFENDANT'S WITNESS LIST | | |
|---|---|---|
| **Name & Address** | **Time to Testify** | **Anticipated Testimony** |
| Robert Almeida current New England Regional Manager Environmental Data Resources, Inc. 3530 Post Road Southport, CT 06490 | 3 hours direct | Mr. Almeida will testify about EDR's business, pricing, and customers. |
| Robert Barber President Environmental Data Resources, Inc. 3530 Post Road Southport, CT 06490 | 4.0 hours direct | Mr. Barber will testify about Plaintiff's employment with EDR in general, his expense report submissions, his investigation of Mr. Kern's expense submissions, EDR's policies, EDR's decision to terminate Plaintiff, Plaintiff's non-compete agreement with Defendant, Plaintiff's violation of its non-compete agreement with Defendant, and EDR's counterclaims. |
| Kellyann Barberio Payroll Administrator Environmental Data Resources, Inc. 3530 Post Road Southport, CT 06490 | 3.5 hours direct | Ms. Barberio will testify about Plaintiff's expense report submissions in violation of EDR's policies. |
| David Beerbower Nutting Environmental | 3 hours direct | Mr. Beerbower will testify about Nutting Environmental's business relationship with EDR, Mr. Kern's contacts with Nutting |

| | | |
|---|---|---|
| | | Environmental while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Nutting Environmental relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Nutting Environmental after his departure from EDR. |
| Anthony Buonicore<br>Chairman<br>Environmental Data Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 3 hours direct | Mr. Buonicore will testify about EDR, its policies, its business, and its customers. |
| Joseph Burstiner<br>VP – Consultant Market<br>Environmental Data Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 1.5 | Kern's supervisor. Requested explanation from Kern regarding his expense report practices. Mr. Burstliner can testify to the fact that EDR put Kern on notice of his fraudulent submissions of bills for reimbursement. |
| Patrick Coyne<br>Vice President Sales<br>Environmental Data Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 3 hours direct | Mr. Coyne will testify about EDR, its policies, its business, and its customers. |
| Jeff Cowan<br>ATC Associates and member of the FEAA | 3 hours direct | Mr. Cowan will testify about Mr. Kern's contacts with ATC Associates while he was an agent of EDR, Mr. Kern's knowledge of the EDR/ATC Associates relationship as a result of Mr. Kern's |

19

| | | |
|---|---|---|
| | | relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards ATC Associates after his departure from EDR. |
| Allyson ("Ally") Dusault former Georgia Regional Manager Address Unknown | 1.5 hours direct | Ms. Dusault will testify about EDR, EDR's expense reimbursement policy, and her expense reimbursement submissions. |
| Jeff Flarrity Miller, Legg | 3 hours direct | Mr. Flarrity will testify about Miller, Legg's business relationship with EDR, Mr. Kern's contacts with Miller, Legg while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Miller, Legg relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Miller, Legg after his departure from EDR. |
| Joseph Freehill former Regional VP of Sales | 3 hours direct | Mr. Freehill will testify about EDR and EDR policies. |
| Todd Grant Golder Associates | 3 hours direct | Mr. Grant will testify about Golder Associates' business relationship with EDR, Mr. Kern's contacts with Golder Associates while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Golder Associates relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Golder Associates |

|  |  | after his departure from EDR. |
|---|---|---|
| Patrick Kennedy<br>current Florida Regional Manager<br>Environmental Data Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 3 hours direct | Mr. Kennedy will testify about EDR, EDR customers, and EDR policies. |
| Paul Konnik<br>current Regional Manager covering Missouri<br>Environmental Data Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 3 hours direct | Mr. Konnik will testify about recent statements made by Mr. Kern about EDR and Rob Barber, on EDR and its policies. |
| Rick Pearce<br>Terracon | 3 hours direct | Mr. Pearce will testify about Terracon's business relationship with EDR, Mr. Kern's contacts with Terracon while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Terracon relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Terracon after his departure from EDR. |
| Brian Shunk<br>former Florida Regional Manager | 3 hours direct | Mr. Shank will testify about EDR, EDR customers, and EDR policies. |
| Gary Sirota<br>Shaw Group | 3 hours direct | Mr. Sirota will testify about Shaw Group's business relationship with EDR, Mr. Kern's contacts with Shaw Group while he was an agent of EDR, Mr. Kern's |

| | | |
|---|---|---|
| | | knowledge of the EDR/Shaw Group relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Shaw Group after his departure from EDR. |
| Mark Shearon<br>formerly with PSI | 3 hours direct | Mr. Shearon will testify about PSI's business relationship with EDR, Mr. Kern's contacts with PSI while he was an agent of EDR, Mr. Kern's knowledge of the EDR/PSI relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards PSI after his departure from EDR. |
| Robert Stephens<br>Bruder Stephens and President of the Florida Environmental Assessors Association | 3 hours direct | Mr. Stephens will testify about Bruder Stephens' business relationship with EDR, Mr. Kern's contacts with Bruder Stephens while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Bruder Stephens relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Bruder Stephens after his departure from EDR. |
| Darren Stowe<br>ETC | 3 hours direct | Mr. Stowe will testify about ETC's business relationship with EDR, Mr. Kern's contacts with ETC while he |

| | | |
|---|---|---|
| | | was an agent of EDR, Mr. Kern's knowledge of the EDR/ETC relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards ETC after his departure from EDR. |
| Skip Strohom<br>FirstSearch Technology sales representative covering Florida | 5 hours direct | Knowledge about Mr. Kern's post-EDR conduct, including Kern's relationship with FirstSearch Technologies, and Mr. Kern's contacts, solicitation with clients and customers of EDR. |
| Charles W. Kern<br>3540 NW 71st Street<br>Coconut Creek, Florida 33073<br>954-422-9925 | | Charles Kern will testify concerning his improper use of EDR's expense reimbursement policy, his relationship with First Search, his solicitation of EDR customers, and his general post-employment conduct. |
| Lou VonOldenberg<br>Shaw Group | 3 hours direct | Mr. VonOldenberg will testify about Shaw Group's business relationship with EDR, Mr. Kern's contacts with Shaw Group while he was an agent of EDR, Mr. Kern's knowledge of the EDR/Shaw Group relationship as a result of Mr. Kern's relationship with EDR, and Mr. Kern's solicitations, statements, and conduct towards Shaw Group after his departure from EDR. |

| | | |
|---|---|---|
| Oreste Petillo<br>c/o Environmental Data<br>Resources, Inc.<br>3530 Post Road<br>Southport, CT 06490 | 3.0 | EDR employee who can provide testimony regarding EDR's policies on expense reports and reimbursements, accrual of vacation and sick time, and EDR benefits. |
| *** Defendant/Counterclaimant also reserves the right to call additional witnesses to rebut and/or impeach any testimony provided by Plaintiff and the witnesses he calls during his case-in-chief. | | |

9.    **EXHIBITS**

A.    ***Plaintiff's List of Exhibits***

| PLAINTIFF'S EXHIBITS | |
|---|---|
| **Exhibit No.** | **Description** |
| (A) | Letter dated June 23, 1994 from Brian J. McCarter to the plaintiff re offer of employment. |
| (B) | Memo dated May 21, 1999 from Carla Carloni to Regional Managers re Expense Reports. |
| (C) | Email dated January 23, 2000 from Brian McCarter to the plaintiff re plaintiff's job performance. |
| (D) | Letter dated May 15, 2000 from Joseph T. Freehill to the plaintiff re offer of employment. |
| (E) | Employee Non-Compete/Confidentiality Agreement dated July 25, 1994. |
| (F) | Email dated May 3, 2001 from JBurstliner to the plaintiff re plaintiff's job accomplishment. |
| (G) | Email dated May 4, 2001 from JBurstliner to A. Buonicore re plaintiff's job accomplishment. |
| (H) | Email dated July 6, 2001 from R. Barber to the plaintiff re plaintiff's job accomplishment. |
| (I) | Email dated August 14, 2001 from A. Buonicore to the plaintiff re plaintiff's job accomplishment. |
| (J) | Email dated August 14, 2001 from R. Barber to the plaintiff re plaintiff's job performance. |
| (K) | Email dated August 14, 2001 from the plaintiff to R. Barber re expression of gratitude. |
| (L) | Email dated August 15, 2001 from R. Barber to the plaintiff re plaintiff's job accomplishments. |
| (M) | Email dated November 5, 2001 from R. Barber to the "Team" re job performance. |
| (N) | Email dated November 16, 2001 from R. Barber to the plaintiff re plaintiff's job performance. |
| (O) | Email dated November 16, 2001 from R. Barber to the "Team" re job performance. |

| PLAINTIFF'S EXHIBITS | |
|---|---|
| (P) | Email dated December 16, 2001 from R. Barber to the plaintiff re President's Club Plaque. |
| (Q) | Series of three emails dated January 18, 2002 by and between J. Burstiner and the plaintiff re plaintiff's performance review. |
| (R) | Email dated January 21, 2002 from JBurstliner to the plaintiff re plaintiff's job performance. |
| (S) | Email dated February 1, 2002 from R. Barber to the "Team" re job performance. |
| (T) | Email dated February 5, 2002 from R. Barber to the "Team" re job performance. |
| (U) | Email dated March 7, 2002 from Joe Freehill to the "Team" re job performance. |
| (V) | Email dated April 12, 2002 from A. Buonicore to the plaintiff re plaintiff's job accomplishment. |
| (W) | Performance Review dated April, 2002 re plaintiff's job performance. |
| (X) | Email dated May 1, 2002 from R. Barber to the "Team" re job performance. |
| (Y) | Memo dated May 2, 2002 from Oreste Petillo to EDR re Expense Report Policies. |
| (Z) | Series of Emails dated May 13, 2002 and May 14, 2002 by and between the plaintiff, J. Burstiner, B. Burstiner, and A. Buonicore re plaintiff's job accomplishment. |
| (AA) | Series of two emails dated June 2, 2002 and June 3, 2002 by and between R. Barber and the plaintiff re future job opportunities. |
| (BB) | Series of two emails dated June 10, 2002 and June 11, 2002 by and between plaintiff and J. Burstiner re plaintiff's job performance. |
| (CC) | Email dated June 17, 2002 from B. Burstiner to the plaintiff re plaintiff's job performance. |
| (DD) | Email dated June 17, 2002 from B. Burstiner to the "Team" re job performance. |
| (EE) | Email dated July 8, 2002 from R. Barber to the "Team" re job effort. |
| (FF) | Series of emails dated July 9, 2002 by and between the plaintiff and J. Burstiner re errors in plaintiff's expense reports. |

| PLAINTIFF'S EXHIBITS | |
|---|---|
| (GG) | Series of email dated July 9, 2002 and July 10, 2002 by and between K. Barberio and the plaintiff re errors in plaintiff's expense reports. |
| (HH) | Letter dated July 11, 2002 from Robert D. Barber to the plaintiff re termination of plaintiff's employment. |
| (II) | Letter dated August 9, 2002 from Robert D. Barber to the plaintiff re plaintiff's accusations of wrongdoing. |
| (JJ) | Memo dated August 29, 2002 from Rob Barber to the plaintiff re payment of plaintiff's accrued vacation time. |
| (KK) | Determination dated August 26, 2002 issued by Agency for Workforce Innovation re plaintiff's entitlement to unemployment compensation. |
| (LL) | Letter dated March 10, 2003 from the United States Equal Employment Opportunity Commission to the plaintiff re defendant's response to plaintiff's claim of age discrimination. |
| (MM) | Letter dated March 13, 2003 from the plaintiff to the United States Equal Employment Opportunity Commission re defendant's response to plaintiff's claim of age discrimination. |
| (NN) | Letter dated March 6, 2002 from Brian D. Buckstein to Thomas W. Bucci re payment to the plaintiff of accrued vacation time. |
| (OO) | Employee Non-Compete/Confidentiality Agreement dated May 17, 2000. |
| (PP) | Plaintiff's Age Discrimination Complaint filed with the United States Equal Employment Opportunity Commission. |

B.    ***Defendant's List of Exhibits***

| DEFENDANT'S EXHIBITS | |
|---|---|
| **Exhibit No.** | **Description** |
| (1) | Declaration of Robert D. Barber |
| (2) | Excerpts from Deposition of Plaintiff Charles W. Kern |
| (3) | June 23, 1994 Letter from Brian McCarter to Charles W. Kern re: offer of employment |
| (4) | July 25, 1994 Employee Non-Compete/Confidentiality Agreement ("1994 Agreement") |
| (5) | January 30, 2001 Memorandum from Rob Barber to Charles W. Kern Re: Performance Issues |
| (6) | May 15, 2000 Letter from Joseph T. Freehill to Charles W. Kern re: new employment offer and agreement |
| (7) | May 17, 2000 Employee Non-Compete/Confidentiality Agreement ("2000 Agreement") |
| (8) | May 2, 2002 Memorandum Re: Expense Report Policies |
| (9) | February 2001 EDR Travel & Entertainment Expense Policy |
| (10) | Kern's Reports of Business Expenses for the week ending December 1, 2001 |
| (11) | Kern's Reports of Business Expenses for the week ending December 8, 2001 |
| (12) | Kern's Reports of Business Expenses for the week ending January 12, 2002 |
| (13) | Kern's Reports of Business Expenses for the week ending January 19, 2002 |
| (14) | Kern's Reports of Business Expenses for the week ending January 26, 2002 |
| (15) | Kern's Reports of Business Expenses for the week ending February 9, 2002 |
| (16) | Kern's Reports of Business Expenses for the week ending February 16, 2002 |
| (17) | Kern's Reports of Business Expenses for the week ending February 23, 2002 |
| (18) | Kern's Reports of Business Expenses for the week ending March 9, 2002 |

| DEFENDANT'S EXHIBITS | |
|---|---|
| (19) | Kern's Reports of Business Expenses for the week ending March 16, 2002 |
| (20) | Kern's Reports of Business Expenses for the week ending March 23, 2002 |
| (21) | Kern's Reports of Business Expenses for the week ending April 20, 2002 |
| (22) | Kern's Reports of Business Expenses for the week ending April 27, 2002 |
| (23) | Kern's Reports of Business Expenses for the week ending May 4, 2002 |
| (24) | Kern's Reports of Business Expenses for the week ending May 18, 2002 |
| (25) | Kern's Reports of Business Expenses for the week ending May 25, 2002 |
| (26) | Kern's Reports of Business Expenses for the week ending June 1, 2002 |
| (27) | Kern's Reports of Business Expenses for the week ending June 8, 2002 |
| (28) | Kern's Reports of Business Expenses for the week ending June 15, 2002 |
| (29) | Kern's Reports of Business Expenses for the week ending June 29, 2002 |
| (30) | Kern's Reports of Business Expenses for the week ending July 6, 2002 |
| (31) | July 11, 2002 Letter from Robert D. Barber to Charles W. Kern re: termination |
| (32) | October 25, 2002 Independent Contractor Agreement Between Environmental First Search and Environmental Reports |
| (33) | November 25, 2002 Letter from Robert D. Barber to Charles W. Kern re: violation of non-compete with EDR |
| (34) | November 25, 2002 Letter from Robert D. Barter to Edward "Tad" Minkler re: violation of non-compete with EDR |
| (35) | January 13, 2003 Letter from Edward "Tad" Mickler to Charles W. Kern re: termination of relationship between first search and Kern |
| (36) | Environmental Reports, Inc. Certificate of Corporation |
| (37) | August 14, 2001 email from Anthony Buonicore to Charles Kern re: First Search |
| (38) | July 10, 2002 email from Kellyann Barberio to Charles Kern re: expense report review |

| DEFENDANT'S EXHIBITS | |
|---|---|
| (39) | August 20, 2002 letter from Charles Kern to Rob Barber re: expense to close office |
| (40) | Undated letter from Charles Kern to Anthony Buonicore re: termination from EDR |
| (41) | November 1, 2002 Independent Contractor Agreement between FirstSearch Technology Corporation and Environmental Reports, Inc. |
| (42) | December 2, 2002 email from Tad Minkler to Rob Barber re: employment of Charles Kern |
| (43) | December 6, 2002 letter from Charles Kern to Rob Barber re: non-compete agreement |
| (44) | December 4, 2002 email from Rob Barber to Tad Minkler re: non-compete agreement of Charles Kern |
| (45) | June 2002 AT&T statement of Charles Kern |
| (46) | July 2002 AT&T statement of Charles Kern |
| (47) | July 2002 AT&T Wireless statement of Charles Kern |
| (48) | Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission by Charles Kern on December 19, 2002 |
| (49) | March 13, 2003 letter from Charles Kern to the U.S. Equal Employment Opportunity Commission |
| (50) | Brownfields Development Group, Inc. Certificate of Corporation |
| (51) | June 3, 2002 email from Charles Kern to Rob Barber re: CWK Opportunity |
| (52) | May 21, 1999 memorandum from Carla Carloni to Regional Managers re: Expense Reports |
| (53) | January 23, 2002 email from Brian McCarter to Charles Kern re: Million Dollar Month at Sanborn |
| (54) | May 3, 2001 email from Joseph Burstiner to Charles Kern re: EDR/LAW partnership |

| DEFENDANT'S EXHIBITS | |
|---|---|
| (55) | May 4, 2001 email from Joseph Burstiner to Charles Kern re: LAW account |
| (56) | July 6, 2001 email from Rob Barber to Charles Kern re: Florida region |
| (57) | August 15, 2001 email from Rob Barber to Charles Kern re: First Search |
| (58) | August 27, 2001 email from Taylor D'Alexander to Charles Kern re: commission |
| (59) | September 4, 2001 email from Taylor D'Alexander to Carla Lombardo re: Commissions of Charles Kern |
| (60) | November 5, 2001 email from Joseph Burstiner to Charles Kern re: October RM of the Month |
| (61) | November 16, 2001 email from Rob Barber to Charles Kern re: RM Team Performance Year to Date |
| (62) | December 14, 2001 email from Taylor D'Alexander to Charles Kern re: commisson |
| (63) | December 16, 2001 email from Rob Barber to Charles Kern re: president's club plaque |
| (64) | January 18, 2002 email from Joseph Burstiner to Charles Kern re: first quarter 2002 session PPs |
| (65) | January 21, 2002 email from Joseph Burstiner to Charles Kern re: January 2002 session PPs |
| (66) | February 1, 2002 email from Rob Barber to EDR Team re: RM of the Month & January 100% Club |
| (67) | February 5, 2002 email from Rob Barber to EDR Team re: RM year to date % of budget |
| (68) | May 7, 2002 email from Joe Freehill to Charles Kern re; Loan Check Kudos |
| (69) | April 12, 2002 email from Anthony Buonicore to Charles Kern re: PSI account |
| (70) | April 2002 review of Charles Kern |
| (71) | May 1, 2002 email from Rob Barber to EDR Team re: April RM of the Month & 100% Club |

| | **DEFENDANT'S EXHIBITS** |
|---|---|
| | & 100% Club |
| (72) | May 2002 Expense Report Policy |
| (73) | May 14, 2002 email from Anthony Buonicore to Charles Kern re: NAGGL & NADCO |
| (74) | June 11, 2002 email from Joseph Burstiner to Charles Kern re: 90 day performance |
| (75) | June 17, 2002 email from Brian Burstiner to Charles Kern re: GRC unit per day trend, April vs. May |
| (76) | June 27, 2002 email from Joseph Burstiner to Charles Kern re: FNIS Transaction |
| (77) | July 3, 2002 email from Joseph Burstiner to Charles Kern re: June sales report |
| (78) | July 8, 2002 email from Rob Barber to EDR Team re: June NSO Bookings Performance |
| (79) | July 9, 2002 email from Joseph Burstiner to Charles Kern re: expense report review |
| (80) | FY 2002 Sales Report for Charles Kern |
| (81) | Year vs. Year Comparisons for October 2000-January 2001 to October 2001-January 2002 |
| (82) | Bookings Report for December 2000-May 2002 for Charles Kern |
| (83) | July 25, 2002 letter from Joseph Burstiner to Charles Kern re: addendum to separation agreement (no specific amounts) |
| (84) | July 25, 2002 letter from Joseph Burstiner to Charles Kern re: addendum to separation agreement (with no bonus amount) |
| (85) | August 2, 2002 letter from Joseph Burstiner to Charles Kern re: addendum to separation agreement (with specific amounts) |
| (86) | August 9, 2002 letter from Rob Barber to Charles Kern re: threatened litigation |
| (87) | August 19, 2002 handwritten notes from Charles Kern to Kellyann Barberio re: |

| | DEFENDANT'S EXHIBITS |
|---|---|
| | final expenses |
| (88) | August 29, 2002 memorandum from Rob Barber to Charles Kern re: expense to close office |
| (89) | July 24, 2002 payment receipt from Florida Chamber of Commerce |
| (90) | August 26, 2002 determination from Agency for Workforce Innovation for Charles Kern |
| (91) | January 8, 2003 letter from Broward County Civil Rights Division forwarding charge of discrimination to U.S. Equal Employment Opportunity Commission |
| (92) | March 10, 2003 letter from U.S. Equal Employment Opportunity Commission to Charles Kern re: reply to position statement |
| (93) | March 15, 2002 State of Earning for Charles Kern |
| (94) | March 28, 2002 State of Earning for Charles Kern |
| (95) | April 15, 2002 State of Earning for Charles Kern |
| (96) | May 15, 2002 State of Earning for Charles Kern |
| (97) | May 31, 2002 State of Earning for Charles Kern |
| (98) | June 14, 2002 State of Earning for Charles Kern |
| (99) | June 28, 2002 State of Earning for Charles Kern |
| (100) | July 15, 2002 State of Earning for Charles Kern |
| (101) | July 31, 2002 State of Earning for Charles Kern |
| (102) | August 15, 2002 State of Earning for Charles Kern |
| (103) | March 2001 commission spreadsheet for Charles Kern |
| (104) | April 2001 commission spreadsheet for Charles Kern |
| (105) | May 2001 commission spreadsheet for Charles Kern |
| (106) | June 2001 commission spreadsheet for Charles Kern |
| (107) | July 2001 commission spreadsheet for Charles Kern |

| DEFENDANT'S EXHIBITS | |
|---|---|
| (108) | Separation Agreement and General Release for Charles Kern, signed by Rob Barber |
| (109) | Separation Agreement and General Release for Charles Kern, unexecuted |
| (110) | 1999 U.S. Income Tax Return for Charles Kern |
| (111) | 2000 U.S. Income Tax Return for Charles Kern |
| (112) | 2001 U.S. Income Tax Return for Charles Kern |
| (113) | 2002 U.S. Income Tax Return for Charles Kern |
| (114) | January 29, 2003 contingency fee agreement between Charles Kern and Thomas W. Bucci, Esq. |
| (115) | May 25, 2001 Retail Installment Contract with Ed Morse Acura |
| (116) | Complaint, dated February 5, 2003[1] |
| (117) | Defendant Environmental Data Resources, Inc.'s Answer, Affirmative Defenses and Counterclaims Against Plaintiff, dated March 28, 2003[2] |
| (118) | First Substituted Complaint, dated April 28, 2003[3] |
| (119) | Payroll records concerning Plaintiff |
| (120) | Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff, dated April 11, 2003 |
| (121) | Plaintiff's Responses to Defendant's Second Set of Interrogatories to Plaintiff, dated June 3, 2003 |
| ***All exhibits listed by Plaintiff on this list of exhibits. | |

---

[1] Plaintiff objects to the introduction of Exhibit 116.
[2] Plaintiff objects to the introduction of Exhibit 117.
[3] Plaintiff objects to the introduction of Exhibit 118.

**10.**     **TRIAL TO COURT/JURY**

Attached as Tab A are the Joint Proposesd Jury Instructions submitted by Plaintiff and Defendant/Counterclaimant.  Attached as Tab B are the Joint Proposed Voir Dire questions submitted by Plaintiff and Defendant/Counterclaimant.  Both Plaintiff and Defendant/Counterclaimant will make opening statements.

Respectfully Submitted,

Morgan, Lewis & Bockius LLP

Willinger, Willinger & Bucci, P.C.

By: _____

By: _____

    Thomas W. Bucci, Esquire
     Ct. Fed. Bar No. 07805
     *thomasbucci@earthlink.net*
    855 Main Street
    Bridgeport, Connecticut 06604
    Telephone:    203.366.3939
    Facsimile:

    Mark E. Zelek
     Ct. Fed Bar No. ct25203
     *mzelek@morganlewis.com*
    Brian D. Buckstein
     Ct. Fed Bar No. ct24543
     *bbuckstein@morganlewis.com*
    5300 Wachovia Financial Center
    200 South Biscayne Boulevard
    Miami, Florida  33131-2339
    Telephone:    305.415.3303
    Facsimile:    305.415.3001

    Sarah W. Poston, Esq.
    Ct. Fed. Bar No. ct19702
    Marcy Tench Stovall, Es.
    Ct. Fed. Bar No. ct14238
    Zeldes, Needle & Cooper, P.C.
    1000 Lafayette Blvd.
    P.O. Box 1740
    Bridgeport, CT  06601-1740
    Telephone:  (203)  333-9441
    Facsimile 203.333.1489